## DANIEL L. REEDER *et al.*

### *v.*

## ERASTUS S. PURDY AND WIFE.

## SAME

### *v.*

## ERASTUS S. PURDY.

| 41 | 279 |
|----|-----|
| 28a | 316 |

| 41 | 279 |
|----|-----|
| 146 | 393 |

| 41 | 279 |
|----|-----|
| 147 | 340 |

| 41 | 279 |
|----|-----|
| 44a | 67 |
| 45a | 496 |

| 41 | 279 |
|----|-----|
| 61a | 127 |

| 41 | 279 |
|----|-----|
| 81a | 417 |

1. TRESPASS — *when it will lie — right of the owner in fee of land, who is entitled to possession, to enter by force.* The owner of real estate has a right to enter upon and enjoy his own property, if he can do so without a forcible disturbance of the possession of another.

2. But, though the owner in fee be wrongfully kept out of possession, he cannot, in this State, be permitted to enter against the will of the occupant. The common law right to enter, and to use all necessary force to obtain possession from him who may wrongfully withhold it, has been taken away by our statute of forcible entry and detainer.

3. That statute, not in terms, but by necessary construction, forbids a forcible entry, even by the owner, upon the actual possession of another.

4. Nor is the remedy afforded by the statute — an action for the recovery of the possession — the only remedy given to the party upon whom a forcible entry may be made by the owner. Under the statute, such an entry is unlawful; and being unlawful it is a trespass, and an action for the trespass will lie.

5. Such an entry being forbidden by the statute, which has taken away the common law right of forcible entry by the owner, it must be held illegal in all forms of action.

6. And any entry is forcible, within the meaning of this law, that is made against the will of the occupant.

7. A landlord, however, has the right to enter upon the possession of his tenant for certain purposes, as to demand rent, or to make necessary repairs, and the action of trespass *quare clausum* by the tenant against the landlord, even for the recovery of nominal damages, is confined to those cases where an action of forcible entry and detainer will lie under our statute.

8. MEASURE OF DAMAGES — *in trespass against the owner of land for a forcible entry thereon.* Although the occupant of land may maintain trespass against the owner for a forcible entry, yet he can only recover such damages as have directly accrued to him from injuries done to his person or property, through the wrongful invasion of his possession, and such exemplary damages as the jury may think proper to give. He cannot recover for any damages to the real estate.

9. And, for the mere entry of the landlord upon the possession of his tenant, holding over, unaccompanied by any trespass upon either the person or the personal property of the occupant, only nominal damages can be recovered, because the plaintiff has no legal right to the possession.

10. Of EXEMPLARY DAMAGES — *where there are two suits, in different rights. for the same trespass.* Where there are two actions of trespass brought for injuries to the person of a *feme covert,* one in the names of the husband and wife jointly, and the other in the name of the husband alone, and the circumstances and acts out of which the question of punitive damages arises, are the same in both cases, it being one and the same transaction, if on the trial of the former suit those circumstances of aggravation were submitted to the jury, while, in strict law, exemplary damages are recoverable in both cases, because the suits are in different rights, yet, on the trial of the second case, the jury, in considering the same circumstances of aggravation with the view to punitive damages, should also consider that they had been submitted on the former trial.

11. MITIGATION OF DAMAGES — *in trespass against the owner of land for a forcible entry.* In trespass, by the occupant of land against the owner, for a forcible entry on the premises, the fact that the defendant was the owner, and entitled to the possession, cannot be regarded in mitigation of the *actual* damage suffered by the plaintiff, but may be considered in mitigation of exemplary damages.

12. EVIDENCE — *in trespass by husband and wife for injuries to the latter.* In an action of trespass by husband and wife for personal injuries to the latter, evidence of injury to the property of the husband at the same time, is inadmissible, except so far as may be necessary to explain the assault on the person of the wife.

13. INSTRUCTIONS. Although an instruction may, in itself, be strictly correct, yet, if, in view of the circumstances surrounding the case, it would be likely to mislead the jury, its effect in that regard should be guarded against by other instructions.

APPEALS from the Circuit Court of Kane county; the Hon. ISAAC G. WILSON, Judge, presiding.

The opinion of the court contains a sufficient statement of the cases.

Mr. S. W. BROWN, for the appellants, upon the principal question arising under the assignment of errors, contended that a person who is the owner of premises, and lawfully entitled to the possession of the same, may enter upon the person in possession, and remove him and his goods, with such gentle force

as may be necessary for the purpose. Citing 4 Kent's Com. (3d ed.) marg. p. 118; *Taylor* v. *Cole*, 3 Term, 292; *S. C.*, 1 H. Black. 555; *Taunton* v. *Costar*, 7 Term, 431; *Overdeer* v. *Lewis*, 1 Watts & Sergeant's; *Harvey* v. *Brydges*, 14 M. & W. 437 (Exchequer); *Walton* v. *File*, 1 Dev. & Bat. 567; *Meriton* v. *Combs*, 67 E. C. L. 788; 1 Hawk. 274; *Jackson* v. *Stansbury*, 9 Wend. 201; *Wilde* v. *Cantillon*, 1 Johns. Cases, 123; *McDougall* v. *Sitcher & Weeks*, 1 Johns. 44; *Ives* v. *Ives*, 13 id. 235; Blackstone Com. marg. p. 214; and that a party is not liable in an action of trespass for exercising that right.

Mr. B. F. PARKS, on the same side.

Messrs. WHEATON & SEARLES, for the appellees, insisted the law to be otherwise, that a person who is the owner of premises, even though he has the right of possession, has no right to enter upon another who is in the quiet and peaceful possession of such premises, and put him out by force, thereby taking the law into his own hands, in violation of the statute of forcible entry and detainer; and, if he does so, trespass will lie. Citing *Justin* v. *Cowdry et al.*, 23 Verm. 631; *Newton and wife* v. *Harland et al.*, 1 Man. & Gr. 644 (39 Eng. Com. Law, 581); *Hilary* v. *Gray*, 6 Carr. & Payne (25 Eng. Com. Law, 368); *Faulkner* v. *Alderson*, 1 Va. (Gilman) 221; 28 Ill. 387; 32 id. 290.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

These two cases, although separately tried, depend upon the same facts and present similar questions, and it will be more convenient to dispose of both in one opinion.

In October, 1862, Reeder, claiming to be the owner of a house occupied by Purdy and his wife, entered it, accompanied by the other appellants, for the purpose of taking possession. Purdy was not at home. Mrs. Purdy refused to leave, whereupon Reeder commenced putting the furniture out of doors. She resisted this, and he seized her and held her by the wrists, while Baker, one of the co-defendants, continued to remove the

furniture. This was somewhat damaged, and some slight injury was done to the wrists of Mrs. Purdy by the force applied in holding her. The appellants finally abandoned their attempt to take possession and withdrew.

Two actions of trespass have been brought, one by Purdy alone, and one by Purdy and wife jointly. The declaration in the suit brought by Purdy contains three counts, the first being for the assault upon his wife, the second for the injury to the personal property, and the third for breaking his close and carrying off his furniture. The declaration in the suit of Purdy and wife contains two counts, both of which are for the assault upon the wife. There were pleas of not guilty, and an agreement that all defenses might be made under them. A verdict for the plaintiff of $450 in one case, and $500 in the other was returned by the jury, and a judgment was rendered upon it, from which the defendants appealed.

It is insisted by the appellants that Reeder, being the owner of the premises, had a right to enter, and to use such force as might be necessary to overcome any resistance, and that he cannot be made liable as a trespasser, although it is admitted he might have been compelled to restore to Purdy, through an action of forcible entry and detainer, the possession thus forcibly taken. The court below instructed otherwise, and this ruling of the court is assigned for error.

We should not consider the question one of much difficulty, were it not for the contradictory decisions in regard to it, and we must admit that the current of authorities, up to a comparatively recent period, is adverse to what we are convinced must be declared to be the law of this State. But the rule can not be said to have been firmly or authoritatively settled even in England, for ERSKINE, J., observes in *Newton* v. *Harland*, 1 Man. & Gr. 644 (39 E. C. L. 581), that "it was remarkable a question so likely to arise, should never have been directly brought before any court *in banc* until that case." This was in the year 1840, and all the cases prior to that time, in which it was held that the owner in fee could enter with a strong hand, without rendering himself liable to an action of trespass,

seem to have been merely at *nisi prius*, like the oft-quoted case of *Taunton* v. *Costar*, 7 T. R. 431. Still this was the general language of the books. But the point had never received such an adjudication as to pass into established and incontrovertible law, and a contrary rule was held by Lord LYNDHURST in *Hilary* v. *Gay*, 6 C. & P. 284 (25 E. C. L. 398). But in *Newton* v. *Harland*, already referred to, the Court of Common Pleas gave the question mature consideration, and finally held, after two arguments, that a landlord who should enter and expel by force a tenant holding over after expiration of his term, would render himself liable to an action for damages. But the later case of *Meriton* v. *Combs*, 67 E. C. L. 788, seems to recognize the opposite rule, and we must, therefore, regard a question which one would expect to find among the most firmly settled in the law as still among the controverted points of Westminster hall.

In our own country there is the same conflict of authorities. In New York it has been uniformly held, that, under a plea of *liberum tenementum*, the landlord, who has only used such force as might be necessary to expel a tenant holding over, would be protected against an action for damages. *Hyatt* v. *Wood*, 4 Johns. 150, and *Ives* v. *Ives*, 13 id. 235. In *Jackson* v. *Farmer*, 9 Wend. 201, the court, while recognizing the rule as law, characterize it as "harsh, and tending to the public disturbance and individual conflict." KENT, in his Commentaries, states the principle in the same manner, but in the later editions of the work, reference is made by the learned editor, in a note, to the case of *Newton* v. *Harland*, above quoted, as laying down "the most sound and salutary doctrine." In *Tribble* v. *Trance*, 7 J. J. Marsh. 598, the court held, that, notwithstanding the Kentucky statute of forcible entry and detainer, the owner of the fee, having a right of entry, may use such force as may be necessary to overcome resistance, and protect himself against an action of trespass, under a plea of *liberum tenementum*. On the other hand, the Supreme Court of Massachusetts has held, that, although trespass *quare clausum* may not lie, yet, in an action of trespass for assault and bat-

tery, the landlord must respond in damages, if he has used force to dispossess a tenant holding over. The court say "he may make use of force to defend his lawful possession, but being dispossessed, he has no right to recover possession by force, and by a breach of the peace." *Sampson v. Henry,* 11 Pick. 379. See also *Ellis v. Page,* 1 id. 43; *Sampson v. Henry,* 13 id. 36; *Meader v. Stone,* 7 Metc. 147, and *Moore v. Boyd,* 24 Maine, 242. But by far the most able and exhaustive discussion that this question has received, was in the case of *Dustin v. Cowdry,* 23 Vt. 635, in which Mr. JUSTICE REDFIELD, delivering the opinion of the court, shows, by a train of reasoning which compels conviction, that, in cases of this character, the action of trespass will lie. And he also says: "whether the action should be trespass *quare clausum,* or assault and battery, is immaterial, as under this declaration, if the defendant had pleaded soil and freehold, as some of the cases hold, the plaintiff might have new assigned the trespass to the person of the plaintiff, and a jury, under proper instructions, would have given much the same damages, and upon the same evidence, in whatever form the declaration is drawn." The case of *Massey v. Scott,* 32 Vt., cited as inconsistent with this case, does not in fact conflict with it. It only holds, that trespass *quare clausum* will not lie in behalf of a tenant for an entry not within the statute of forcible entry and detainer.

In this conflict of authorities we must adopt that rule which, in our judgment, rests upon the sounder reason. We cannot hesitate, and were it not for the adverse decision of courts, which all lawyers regard with profound respect, we should not deem the question obscured by a reasonable doubt. The reasoning upon which we rest our conclusion lies in the briefest compass, and is hardly more than a simple syllogism. The statute of forcible entry and detainer, not in terms, but by necessary construction, forbids a forcible entry, even by the owner, upon the actual possession of another. Such entry is, therefore, unlawful. If unlawful it is a trespass, and an action for the trespass must necessarily lie. It is urged that the only remedy is that given by the statute,— an action for the recovery of the posses-

sion.   But the law could not expel him who has entered if his entry was a lawful entry, and if not lawful all the consequences of an unlawful act must attach to it.   The law is not so far beneath the dignity of a scientific and harmonious system that its tribunals must hold in one form of action a particular act to be so illegal that immediate restitution must be made at the costs of the transgressor, and in another form of action that the same act was perfectly legal, and only the exercise of an acknowledged right.

It is urged that the owner of real estate has a right to enter upon and enjoy his own property.   Undoubtedly, if he can do so without a forcible disturbance of the possession of another; but the peace and good order of society require that he shall not be permitted to enter against the will of the occupant, and hence the common law right to use all necessary force has been taken away.   He may be wrongfully kept out of possession, but he cannot be permitted to take the law into his own hands and redress his own wrongs.   The remedy must be sought through those peaceful agencies which a civilized community provides for all its members.   A contrary rule befits only that condition of society in which the principle is recognized that

> He may take who has the power,
> And he may keep who can.

If the right to use force be once admitted, it must necessarily follow as a logical sequence, that so much may be used as shall be necessary to overcome resistance, even to the taking of human life.   The wisdom of confining men to peaceful remedies for the recovery of a lost possession is well expressed by Blackstone, book 4, p. 148: "An eighth offense," he says, "against the public peace, is that of a forcible entry and detainer, which is committed by violently taking or keeping possession of lands and tenements with menaces, force and arms, and without the authority of law.   This was formerly allowable to every person disseized or turned out of possession, unless his entry was taken away or barred by his own neglect or other circumstances, which were explained more at length in a

former book. But this being found very prejudicial to the public peace, it was thought necessary, by several statutes, to restrain all persons from the use of such violent methods, even of doing themselves justice, and much more if they have no justice in their claim. So that the entry now allowed by law is a peaceable one; that forbidden, is such as is carried on with force, violence and unusual weapons." In this State, it has been constantly held that any entry is forcible, within the meaning of this law, that is made against the will of the occupant.

We state, then, after a full examination of this subject, that in our opinion the statutes of forcible entry and detainer should be construed as taking away the previous common law right of forcible entry by the owner, and that such entry must be therefore held illegal in all forms of action.

There are, however, some minor points upon which both of these judgments must be reversed. In the suit brought by the husband alone, the court refused to instruct the jury that the plaintiff could not recover for any damages to the real estate. This instruction should have been given. Although the occupant may maintain trespass against the owner for a forcible entry, yet he can only recover such damages as have directly accrued to him from injuries done to his person or property, through the wrongful invasion of his possession, and such exemplary damages as the jury may think proper to give. But a person having no title to the premises clearly cannot recover damages *for any injury* done to them by him who has title. It would be a startling doctrine to hold that the wrongful occupier of land could make the owner thereof respond to him in damages for timber that the owner might cut upon the premises. This point was decided by this court in *Hoots* v. *Graham*, 23 Ill. 82, to the decision in which case we fully adhere.

In the case brought by Purdy, the court, after telling the jury they could give exemplary damages, gave the following instruction for the plaintiff:

"In estimating the amount of exemplary damages, if they find any, the jury have a right to take into consideration the

unlawful purpose for which defendants were together, if any is proven ; the force and violence with which they attempted to carry out that unlawful purpose, the wantonness of the attack upon the premises, family and property of the plaintiff, if the proof show any such, and the willfulness of the defendants in doing the acts, if the evidence show any such."

The suit brought by Purdy and wife had been already tried, and in that suit the jury had been instructed they might give exemplary damages, and they had undoubtedly given them. The record of that suit was in evidence on the trial of the second suit. The court refused the instructions asked by the defendant, and properly, in the form they were drawn, except as to the one already considered. Neither is there any thing in itself wrong in the foregoing instruction; and yet it is of such a character, that the court, in order to secure a fair consideration of the case by the jury, and having refused all the instructions drawn by the defendant, should, of its own motion, have modified the somewhat augmentative effect of this one by telling the jury that they were also, in estimating the exemplary damages, to consider the fact that the jury in the other suit had been authorized to give exemplary damages, and to take into consideration on that question the amount of the verdict in the other case. We must hold, that, in strict law, exemplary damages are recoverable in both cases, because the suits are brought in different rights. In the suit by Purdy and wife, if Purdy fails to collect the judgment in his life-time, on his death it would go to the wife surviving him, and not to his personal representatives. But, apart from that contingency, the fruits of both judgments go into his pocket. It would, therefore, be highly proper that the jury, in considering the question of punitive damages, should have taken into consideration not only the circumstances of aggravation enumerated in the instruction, but also the fact, that these same circumstances, and the same transaction, had been submitted to another jury, in a suit prosecuted in reality for the benefit of the same plaintiff, and, so far as related to the single question

of the amount of vindictive damages, the amount of the former verdict would have been a proper subject of regard.

The jury were also told in the third instruction for the plaintiff, at the suit of Purdy, that the fact, that the defendant was the owner and entitled to the possession of the premises occupied by the plaintiff could not be regarded by the jury in mitigation of any actual damages caused to the plaintiff by the assault and force. This is undoubtedly true so far as *actual* damage was concerned, but it would not be true in regard to exemplary damages, unless we are prepared to say, that it is as inexcusable for a person to attempt to recover his own property by force as it would be to attempt to rob another of property to which the assailant had no claim. This would not be contended, and while, therefore, the third instruction was strict law, yet, in connection with the other instructions in regard to exemplary damages, and unexplained by any thing in behalf of the defendant, we think the jury would be likely to be misled. This is more especially true in regard to the suit of Purdy and wife, for in the third instruction for the plaintiff in that suit, the jury are told the same thing as to damages, but the word *actual* is left out. The instructions should have been so modified, that the jury would clearly understand on the question of vindictive damages, they would have a right to regard the fact, that the plaintiff was the owner and entitled to the possession of the property, a fact proven in the case.

This last objection applies equally to the instructions in both cases. The others above considered apply only to the suit of Purdy. There is, however, another fatal objection to the judgment in favor of Purdy and wife. Both counts in that declaration are for injuries done to the person of the wife. A suit could not have been maintained in their joint names for injuries done to the property of Purdy. Yet the court, against the objections of defendants, allowed the plaintiff to give in evidence the injury done to the furniture. This was wholly inadmissible, except so far as might be necessary to explain the assault on the person of the wife, and, in a case of this character, notwithstanding the instruction given for the

defendants, this evidence would have a strong tendency to improperly prejudice them in the minds of the jury.

In order to prevent misapprehension we would say, in conclusion, that, for a mere entry by the landlord upon the possession of his tenant holding over, unaccompanied by any trespass upon either the person or personal property of the occupant, only nominal damages could be recovered, because the plaintiff has no legal right to the possession. The *gravamen* of actions of this character is the trespass to the person, and goods and chattels of the tenant. If, for example, a tenant of a house should remove his family and furniture at the end of the term, but refuse, without reason, to surrender the key to his landlord, and still claim the possession, the landlord might, nevertheless, force the door of his vacant house, without incurring a liability to more than nominal damages. He would be liable to an action of forcible entry and detainer, and to an action of trespass, in which nominal damages would be recovered, because the entry would be unlawful, but to nothing more. But for an entry, while the house is still occupied by the family and furniture of the tenant, and for forcibly thrusting them into the street, or attempting to do so, he would be liable to such damages as a jury might deem the case to require. A landlord, however, would have the right to enter upon the possession of his tenant for certain purposes, as to demand rent or to make necessary repairs, and we must be understood as confining the action of trespass *quare clausum* by the tenant against the landlord, even for the recovery of nominal damages, to those cases, where an action of forcible entry and detainer would lie under our statute. By the application of this principle much of the apparent conflict in the authorities can be explained.

The judgment in both of these cases must be reversed and the case remanded.

*Reversed and remanded.*