CASSAUNDRA SPINKS v. JOHN R. TAYLOR, JR., Trading as Taylor Realty

DOROTHY L. RICHARDSON v. JOHN R. TAYLOR COMPANY, INC.

No. 61

(Filed 2 June 1981)

**1. Landlord and Tenant § 18— failure to pay rent—landlord's exercise of self-help**

While a landlord is permitted to use peaceful means to reenter and take possession of leased premises subject to forfeiture, he may not do so against the will of the tenant; an objection by the tenant elevates the reentry to a forceful one, and the landlord's sole lawful recourse at that time is to the courts.

**2. Landlord and Tenant § 18— non-payment of rent—reentry by landlord—forceful taking as jury question**

Where a landlord padlocks premises for failure of a tenant to pay rent, a refusal by the landlord to permit a tenant to enter the premises, for whatever purposes, elevates the landlord's taking to a forceful taking and subjects him to damages, and whether there was such a refusal in this case was a material issue of fact for the jury so that entry of summary judgment for defendant landlord was improper.

**3. Trover and Conversion § 2— landlord's conversion of tenant's property—jury question**

The defendant landlord's actions in denying plaintiff tenant access to her personal goods, if believed by a jury, would constitute a conversion of those goods for which plaintiff would be entitled to recover at least nominal damages, and summary judgment was therefore improperly entered for defendant on the issue of conversion.

**4. Unfair Competition § 1— non-payment of rent—landlord's padlocking of premises—no unfair trade practices**

The practices of defendant landlord in padlocking premises when tenants failed to pay rent did not constitute unfair trade practices under G.S. 75-1.1 *et seq.*

**5. Landlord and Tenant § 18— notice to tenant of padlocked premises—no simulation of court document**

A padlocking notice posted by defendant landlord on the doors of tenants who were late paying their rent did not simulate legal process in violation of G.S. 75-54(5), since the notice in question contained no signatures, no seal, no mention of an official or of a court, no date, and no reference to an amount due.

ON discretionary review to review the decision of the Court of Appeals, 47 N.C. App. 68, 266 S.E. 2d 857 (1980), affirming entry of summary judgment for defendant by *Cecil, J.*, at 6 August 1979 Session of GUILFORD County District Court.

Plaintiffs filed these actions to recover damages allegedly incurred as a result of defendant's wrongful padlocking of leased premises. Each complaint alleged that plaintiff and defendant had entered into a lease agreement for the rental of an apartment in Greensboro, North Carolina. Upon the failure of each plaintiff to pay rent, she was warned that unless payment were forthcoming, the leased premises would be padlocked. Both plaintiffs alleged that their apartments were in fact padlocked while they were absent from the premises. In both instances, the padlocks were removed upon plaintiffs' tender of the amounts due. Among other

things, plaintiffs claimed damages for trespass to real and personal property, for breach of the covenant of quiet enjoyment, for conversion of personal property, and for violation of the Unfair and Deceptive Trade Practice Act, G.S. 75-1.1 *et seq.*

Defendant answered, admitting the existence of the lease agreements and further admitting that, upon failure of plaintiffs to pay rent, both were warned that the premises would be padlocked. Defendant also admitted that the apartments ultimately were padlocked. The lease agreement, attached to and incorporated by reference in defendant's answer, included the following provision:

TERMINATION BY AGENT (DEFAULT, OBJECTIONABLE CONDUCT, RE-ENTRY): If the Resident defaults in the payment of rent after the same becomes due, or if the Resident violates the covenant of this Lease, or if the Agent at any time shall deem the conduct of the Resident or Visitors of the Resident objectionable or improper, the Agent may give the Resident five (5) days written notice of the Agent's intention to terminate this Lease, and this Lease shall terminate at the expiration of such five-day period, anything to the contrary herein notwithstanding. At such time, the Agent shall have the right to re-enter and take possession of the leased premises, without process or by legal process from the Court having jurisdiction over the premises.

The cases were ordered consolidated on 9 August 1979.

Each plaintiff moved for summary judgment on the ground that there was no genuine issue of material fact and she was entitled to judgment as a matter of law.

Defendant likewise filed a motion for summary judgment and submitted the affidavits of John R. Taylor and R. Walton McNairy in support of his motion. All parties then submitted the following stipulated facts and agreed that the motions for summary judgment could be rendered upon these facts:

A. Facts pertinent to the Spinks action.

1. On November 1, 1976, plaintiff Spinks entered into a lease agreement with defendant Taylor for the rental of an apartment at 1835-C Merritt Drive, Greensboro, North

Carolina. Ms. Spinks occupied the apartment as a tenant of Taylor until August 1, 1977.

2. On May 16, 1977, Taylor padlocked the apartment without resort to judicial process.

3. Ms. Spinks subsequently paid the past-due rent, and Taylor removed the padlock.

4. On July 15, 1977, Taylor again padlocked Ms. Spinks' apartment without resort to judicial process.

5. After the padlocking, Taylor placed a card marked "LEGAL NOTICE" on the apartment door.

6. At the time of each padlocking incident, Ms. Spinks was in default in her payment of rent. Before each such incident, Taylor had given notice of default and demand for payment which Ms. Spinks had received at least ten (10) days before the padlocking.

B. Facts pertinent to the Richardson action.

1. Sometime in February, 1977, plaintiff Richardson entered into a lease agreement with defendant Taylor for the rental of an apartment at 3304-E Trent Street, Greensboro, North Carolina. The plaintiff occupied the apartment as a tenant of Taylor until sometime in April, 1978.

2. In January, 1978, Taylor padlocked the apartment without resort to judicial process.

3. On February 21, 1978, Ms. Richardson paid the past-due rent, and Taylor removed the padlock.

4. After the padlocking, Taylor placed a card marked "LEGAL NOTICE" on the apartment door.

5. At the time of the padlocking, Ms. Richardson was in default in her payment of rent. Before the incident, Taylor had given notice of default and demand for payment which Ms. Richardson had received at least ten (10) days before the padlocking.

On 14 August 1979, the trial court entered judgments denying plaintiffs' motions for summary judgments and granting sum-

mary judgment in favor of defendant. The Court of Appeals, in an opinion by Judge Martin (Harry C.), concurred in by Judges Vaughn and Clark, affirmed. We allowed plaintiffs' petition for discretionary review on 7 October 1980.

*Legal Services of Southern Piedmont, Inc., by Theodore O. Fillette, III, and Leslie J. Winner; Central Carolina Legal Services by Robert S. Payne; Ling & Farran, by Jeffrey P. Farran; and George V. Hanna, for plaintiffs.*

*Rufus L. Edmisten, Attorney General, by John R. B. Matthis, Special Deputy Attorney General; James C. Gulick, Assistant Attorney General; and Rebecca R. Bevacqua, Assistant Attorney General, for the State of North Carolina, Amicus Curiae.*

*Smith, Moore, Smith, Schell & Hunter, by Bynum M. Hunter and Suzanne Reynolds, for defendant.*

BRANCH, Chief Justice.

Plaintiffs first contend that the trial court erred in granting summary judgment for defendant since North Carolina law does not recognize a landlord's right to use peaceful self-help to evict tenants who are subject to forfeiture for non-payment of rent. Defendant maintains on the other hand that at common law a landlord had the right to reenter peacefully and take possession of leased premises subject to forfeiture, and that nothing in the statutory or case law of this state abrogates that common law right.

At early common law, a lessor was permitted to reenter leases premises and use necessary force, not amounting to death or bodily harm, to take possession. *Annot.,* 6 A.L.R. 3d 177, § 2 (1966). In 1381, however, Parliament enacted the statute of Forcible Entry, 5 Richard II stat. 1, c. 8, making forcible entry without legal process a crime. That statute provided:

> That none from henceforth make any entry into any lands and tenements but in case where entry is given by the law; and in such case, not with strong hand nor with multitude of people, but only in peaceable and easy manner. And if any man from henceforth do to the contrary, and thereof be duly convict, he shall be punished by imprisonment of his body, and thereof ransomed at the King's will.

2 *Bishop on Criminal Law* § 492 (9th Ed. 1923). In England it was held that, while the use of necessary force may be a crime under the forcible entry statute, a dispossessed tenant still had no civil remedy in the absence of excess force. *Annot.*, 6 A.L.R. 3d 177 § 2. In numerous jurisdictions in this country, including North Carolina, statutes similar to that of 5 Richard II were enacted, and the various constructions placed upon the statutes in the states have produced at least three distinct approaches to the question of self-help evictions.

First, a number of states adhere to the English rule that a landlord may use necessary and reasonable force to expel a tenant and may do so without resort to legal process. *E.g.*, *Virginia Iron, Coal & Coke Co. v. Dickenson*, 143 Va. 250, 129 S.E. 228 (1925); *see generally, Annot.*, 6 A.L.R. 3d 177 § 3(b). A second line of authority holds that a landlord must in any case resort to the remedy provided by law, usually summary ejectment proceedings, in order to evict an overstaying tenant. *E.g.*, *Reader v. Purdy*, 41 Ill. 279 (1866). Finally, a third line of cases, and one which tends to overlap the second line, holds that a landlord entitled to immediate possession may "gain possession of the leased premises by peaceable means, and necessity for recourse to legal process exists only where peaceable means fail and force would otherwise be necessary." *Annot.*, 6 A.L.R. 3d 177, § 6. Within this third category are cases which hold that, while peaceful means technically may be used, *any* retaking which is against the will of the tenant constitutes a forceful retaking and thus is not permitted. *E.g.*, *Reader v. Purdy, supra.*

Turning now to the law of North Carolina, we find that our forcible entry statute reads substantially as did the old English statute and that *Mosseller v. Deaver*, 106 N.C. 494, 11 S.E. 529 (1890), is the pivotal case dealing with the issue before us. In *Mosseller* the landlord entered the tenant's house while the tenant was present and did so "under such circumstances as to constitute a forcible entry under the [forcible entry] statute . . . ." The trial judge instructed the jury that the landlord " 'had the right to go there and put him out by force, if no more force was used than was necessary for that purpose.' " *Id.* at 495, 11 S.E. at 530. This Court disapproved such an instruction, relying on *Reader v. Purdy, supra*, and noted that public policy required "the owner *to use peaceful means or resort to the courts* in order

to regain his possession . . . ." *Id.* [Emphasis added.] It seems clear to us, then, that this state recognizes the right of a lessor to enter peacefully and repossess leased premises which are subject to forfeiture due to nonpayment of rent.

Even so, plaintiffs urge that the existence of statutory summary ejectment procedures precludes the use of self-help measures in evicting a tenant in default of rental payments. We are not inadvertent to the fact that some jurisdictions view the statutory remedies as exclusive and as precluding self-help. *E.g.*, *Malcolm v. Little*, 295 A. 2d 711 (Del. 1972). However, nothing in our summary ejectment statutes indicates a legislative intent to make those remedies exclusive. G.S. 42-26 *et seq.* Furthermore, despite the widespread existence of summary statutory remedies, the majority view still recognizes some degree of self-help. *Annot.*, 6 A.L.R. 3d 177; *Restatement of the Law of Property* 2d § 14.2, Reporter's Note (1977); *e.g.*, *Shorter v. Shelton*, 183 Va. 819, 33 S.E. 2d 643 (1945).

Having determined that the law of this state permits a landlord to employ peaceable self-help measures in repossessing leased premises, we turn now to an inquiry into what acts constitute acts of force which would subject a landlord to civil liability for the reentry.

[1] In *Reader v. Purdy, supra,* relied upon by this Court in *Mosseller,* the court examined the prohibition against the use of force:

> It is urged that the owner of real estate has a right to enter upon and enjoy his own property. Undoubtedly, if he can do so without a forcible disturbance of the possession of another; but the peace and good order of society require that he shall not be permitted to enter against the will of the occupant . . . . He may be wrongfully kept out of possession, but he cannot be permitted to take the law into his own hands and redress his own wrongs. The remedy must be sought through those peaceful agencies which a civilized community provides for all its members. A contrary rule befits only that condition of society in which the principle is recognized that
>
> > He may take who has the power,
> > And he may keep who can.

If the right to use force be once admitted, it must necessarily follow as a logical sequence, that so much may be used as shall be necessary to overcome resistance, even to the taking of human life.

*Id.* at 285. The Illinois court concluded, "In this State, it has been constantly held that *any entry is forcible*, within the meaning of this law, *that is made against the will of the occupant." Id.* at 286. [Emphasis added.] *See Annot.*, 6 A.L.R. 3d 177 § 5 and cases cited therein. We find the reasoning of *Reader* persuasive and perceive no reason for departing from its rule. We therefore hold that while a landlord is permitted to use peaceful means to reenter and take possession of leased premises subject to forfeiture, he may not do so against the will of the tenant; an objection by the tenant elevates the reentry to a forceful one, and the landlord's sole lawful recourse at that time is to the courts.

In the instant case, defendant submitted affidavits in support of his motion for summary judgment which averred, *inter alia,* that: Tenants were given several days' notice of the padlocking. On that day scheduled for the padlocking, the apartment manager would go and knock loudly, announcing the purpose of the visit. If the tenant pays the rent, the procedure ceases; likewise, if the tenant protests, the manager ceases padlocking and tells the tenant that court proceedings will be begun. If the tenant is not at home, the manager checks the apartment to make sure no children or pets are present, and then proceeds to padlock the door. Notice of the padlocking is posted and the manager attempts to notify the tenant personally. According to defendant's affidavit, if the tenant requests personal property from the apartment, he is permitted to enter and remove the property. At any time a tenant objects to the padlocking, the self-help procedures cease and resort is made to the courts.

Notably, neither plaintiff submitted affidavits to dispute or contradict the assertions of defendant. As a general rule, upon a motion for summary judgment, supported by affidavits, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." G.S.

1A-1, Rule 56(e). Ordinarily, then, the trial court's entry of summary judgment against plaintiffs would have been proper for the simple reason that they failed to carry the burden placed upon them by Rule 56(e). As to plaintiff Richardson, we affirm the granting of summary judgment in favor of defendant on the grounds that she failed to submit affidavits showing a genuine issue of material fact and elected to rest upon her unverified complaint.

[2] Plaintiff Spinks, however, had filed a verified complaint. This Court has had occasion to consider the status of a verified pleading in light of the mandates of Rule 56(e). In *Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972), we stated, "A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* at 705, 190 S.E. 2d at 194. And in *Schoolfield v. Collins*, 281 N.C. 604, 189 S.E. 2d 208 (1972), we noted that, "Rule 56(e) does not deny that a properly verified pleading which meets all the requirements for affidavits may effectively 'set forth specific facts showing that there is a genuine issue for trial.' " *Id.* at 612, 189 S.E. 2d at 212-13. Plaintiff Spinks' verified complaint is sufficient to meet the requirements of Rule 56(e), and in it she alleges that she requested access to the apartment to get certain items of clothing but was denied admission. This allegation contradicts the assertion by defendant that if an ousted tenant requested entrance to the apartment to obtain personal property, he would be allowed to enter. A refusal by the landlord to permit a tenant to enter the premises, for whatever purposes, would elevate the taking to a forceful taking and subject the landlord to damages. *Reader v. Purdy, supra.* Whether in this case there was such a refusal is a material issue of fact to be decided by a jury. That being so, entry of summary judgment for defendant as to plaintiff Spinks was improper.

[3] Likewise, we hold that summary judgment was improperly rendered for defendant on the issue of conversion of plaintiff Spinks' personal property. In this state, conversion is defined as

> an authorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition *or the exclusion of an owner's rights.*

*Peed v. Burleson, Inc.*, 244 N.C. 437, 439, 94 S.E. 2d 351, 353 (1956) [emphasis added.]. The landlord's actions in denying plaintiff access to her personal goods, if believed by a jury, would constitute a conversion of those goods, and plaintiff would be permitted to recover at least nominal damages.

[4]   Plaintiff next contends that defendant's padlocking practices constitute unfair trade practices under G.S. 75-1.1 *et seq*. The Court of Appeals found no merit in plaintiff's contentions and distinguished this case from *Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977), *rev. denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978). We agree with the Court of Appeals and hold that G.S. 75-1.1 is inapplicable to the facts of the case before us. We cannot say that defendant's padlocking procedures offend "established public policy" or constitute a practice which is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263, 266 S.E. 2d 610, 621 (1980).

[5]   Plaintiff next contends that defendant's posted notices of the padlocking simulated legal process in violation of G.S. 75-54(5). That statute provides, *inter alia*:

> No debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation. Such representations include, but are not limited to, the following:
>
> .   .   .   .
>
> (5) Using or distributing or selling any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by a court, an official, or any other legally constituted or authorized authority, or which creates a false impression about its source.

G.S. 75-50(3) defines a "debt collector" as "any person engaging, directly or indirectly, in debt collection from a consumer . . . ."

Defendant in the instant case, after padlocking an apartment, would cause the following notice to be posted:

GUILFORD COUNTY          PADLOCKED APARTMENT
NORTH CAROLINA           LEGAL NOTICE

This apartment has been padlocked for nonpayment of rent. ANYONE ENTERING THE APARTMENT IS A TRESPASSER AND WILL BE PROSECUTED.

The previous resident may regain legal possession of the apartment by immediately paying the past due rent.

The previous resident can recover any personal property left in the apartment by immediately contacting the resident manager.

Assuming, without deciding, that defendant is a "debt collector" within the meaning of the statute, we agree with the Court of Appeals that the notice does not constitute a "communication which simulates . . . a document authorized, issued, or approved by a court . . . or any other legally constituted or authorized authority . . . ." The notice contains no signatures, no seal, no mention of an official or of a court, no date, and no reference to an amount due. We do not think the notice "creates a false impression about its source." This assignment is overruled.

In Case No. 78CvD2849, *Richardson v. Taylor*, the decision of the Court of Appeals affirming the entry of summary judgment is modified and affirmed.

In Case No. 78CvD2629, *Spinks v. Taylor*, that portion of the Court of Appeals' decision which affirms the entry of summary judgment for defendant on the issues of reentry of leased premises and conversion of personal property is reversed; the portion affirming summary judgment on grounds that there was no violation of G.S. 75-1.1 or of 75-54(5) is affirmed. The case is remanded to the Court of Appeals for further remand to Guilford County District Court for proceedings in accordance with this opinion.

Case No. 78CvD2849 is modified and affirmed.

Case No. 78CvD2629 is affirmed in part; reversed in part; and remanded.