SQL Sentry, LLC v. ApexSQL, LLC, 2017 NCBC 105.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 17 CVS 13392 |

SQL SENTRY, LLC d/b/a
SENTRYONE, a Delaware limited
liability company,

        Plaintiff,

v.

APEXSQL, LLC, a North Carolina
limited liability company,

        Defendant.

**ORDER AND OPINION
ON MOTION TO DISMISS**

1. Plaintiff SQL Sentry, LLC and Defendant ApexSQL, LLC are competing software development companies. SQL Sentry contends that ApexSQL recently released a software product that improperly incorporates design elements and code from SQL Sentry's software.

2. ApexSQL's motion to dismiss is before the Court. The only issue is whether the complaint adequately states a claim for conversion. Having considered the parties' filings and arguments, the Court **GRANTS** the motion.

*Bray & Long, PLLC, by Jeffrey A. Long, for Plaintiff.*

*Rayburn Cooper & Durham, P.A., by Ross R. Fulton, for Defendant.*

Conrad, Judge.

I.
BACKGROUND

3. The Court does not make findings of fact on a motion to dismiss under Rule12(b)(6) of the North Carolina Rules of Civil Procedure. The following factual summary is drawn from relevant allegations in the complaint.

4.      SQL Sentry is a Delaware limited liability company with its principal place of business in Mecklenburg County, North Carolina. (Compl. ¶ 1, ECF No. 1.) SQL Sentry "develop[s] and distribut[es] software products for commercial use." (Compl. ¶ 6.)

5.      One of SQL Sentry's most successful products is Plan Explorer™. (Compl. ¶ 6.) Plan Explorer enables users to make "resource intensive T-SQL (Transact-SQL) queries" more efficiently "in the Microsoft® enterprise database platform, *SQL Server*." (Compl ¶¶ 7–8, 10.)  According to SQL Sentry, the "high quality and usefulness of the software" have led the Plan Explorer brand to thrive. (Compl. ¶ 11; *see also* Compl. ¶¶ 8, 16.)  Today, Plan Explorer is "the industry's premier query tuning tool," and the Plan Explorer mark and the "distinct design components of the software" are "recognized by customers throughout the world." (Compl. ¶¶ 11, 16.)

6.      ApexSQL develops and distributes SQL Server software that competes with SQL Sentry and Plan Explorer. (*See* Compl. ¶¶ 27–28.) ApexSQL is a North Carolina limited liability company with its principal place of business in Orange County, North Carolina. (Compl. ¶¶ 2, 29.)

7.      In May 2017, SQL Sentry learned that ApexSQL "was marketing a new software product, *ApexSQL Plan*, using the mark 'Plan Explorer.'" (Compl. ¶ 35.) After a demand by SQL Sentry, ApexSQL "removed reference to the offensive 'Plan Explorer' mark." (Compl. ¶¶ 35–40.)  SQL Sentry alleges that *ApexSQL Plan* continues to use other elements of SQL Sentry's software, such as its "design elements," "trade dress," and "underlying code." (Compl. ¶¶ 35–36, 39–40.)

8.     SQL Sentry filed this lawsuit on July 24, 2017, bringing claims for common-law trademark infringement, violation of N.C. Gen. Stat. § 75-1.1, and conversion. ApexSQL moved to dismiss SQL Sentry's conversion claim on September 22, 2017. The motion has been fully briefed, and the Court held a hearing on November 11, 2017. This matter is ripe for determination.

II.
ANALYSIS

9.     A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). "Dismissal of a complaint under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C.172, 175, 347 S.E.2d 743, 745 (1986).

10.     In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986); *see also Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001).

11. ApexSQL contends that SQL Sentry has failed to state a claim for conversion, which "is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Spinks v. Taylor*, 303 N.C. 256, 264–65, 278 S.E.2d 501, 506 (1981) (internal quotation omitted). "The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner." *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 488 (2008).

12. SQL Sentry alleges that ApexSQL converted its Plan Explorer trademark and Plan Explorer software program, including the program's design elements. (Compl. ¶¶ 61–62.) ApexSQL counters that "a conversion claim cannot be brought for intangible assets," such as a trademark. (Mem. in Supp. of Mot. to Dismiss 3, ECF No. 12.) It further argues that there are no allegations "that ApexSQL has denied Plaintiff access to its software program, design elements, or trade dress." (Mem. in Supp. of Mot. to Dismiss 3.) The Court agrees with ApexSQL on both points.

13. ApexSQL is correct that North Carolina does not recognize a claim for conversion of intangible interests, such as trademarks. *See Strategic Mgmt. Decisions, LLC v. Sales Performance Int'l, LLC*, 2017 NCBC LEXIS 69, at *6 (N.C. Super. Ct. Aug. 7, 2017); *HCW Ret. & Fin. Servs., LLC v. HCW Emp. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, at *57–58 (N.C. Super. Ct. July 14, 2015) (dismissing conversion claim as to trademark rights). Conversion is limited to "goods or personal chattels." *Spinks*, 303 N.C. at 264–65, 278 S.E.2d at 506. As a result, SQL Sentry's

allegations regarding its trademark and trade dress rights cannot support a claim for conversion.

14. On the other hand, electronically stored information may qualify as personal property subject to a claim for conversion. The Court analyzed this issue extensively in *Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 51, at *15–20 (N.C. Super. Ct. June 9, 2017).

15. It is a reality of modern life that electronically stored information is "easy to copy" but "hard to destroy." *Id.* at *16, 17. This is significant because "the essence of a conversion claim is *deprivation* to the owner." *Id.* at *18 (citing cases). Numerous decisions of this Court have held that "making a copy of electronically-stored information which does not deprive the plaintiff of possession or use of information, does not support a claim for conversion." *RCJJ, LLC v. RCWIL Enters., LLC*, 2016 NCBC LEXIS 46, at *53 (N.C. Super. Ct. June 20, 2016); *accord New Friendship Used Clothing Collection, LLC v. Katz*, 2017 NCBC LEXIS 72, at *37–40 (N.C. Super. Ct. Aug. 18, 2017); *Strategic Mgmt. Decisions*, 2017 NCBC LEXIS 69, at *6; *Addison Whitney*, 2017 NCBC LEXIS 51, at *17.

16. Here, SQL Sentry does not allege that ApexSQL has deprived it of use of the Plan Explorer software. (*See* Compl. ¶¶ 19, 22.) Instead, SQL Sentry alleges that ApexSQL "blatantly copied design elements," "trade dress," and "underlying code." (Compl. ¶ 40.) These allegations of copying, without more, are insufficient to state a claim for conversion of SQL Sentry's software or other electronically stored information. *See, e.g.*, *New Friendship*, 2017 NCBC LEXIS 72, at *37–40 (granting

motion to dismiss); *Strategic Mgmt. Decisions*, 2017 NCBC LEXIS 69, at *7–8 (same); *Addison Whitney*, 2017 NCBC LEXIS 51, at *17 (same); *RCJJ*, 2016 NCBC LEXIS 46, at *53 (same); *RoundPoint Mortg. Co. v. Florez*, 2016 NCBC LEXIS 17, at *55 (N.C. Super. Ct. Feb. 18, 2016) (same); *Horner Int'l Co. v. McKoy*, 2014 NCBC LEXIS 68, at *8 (N.C. Super. Ct. Dec. 18, 2014) (same).

17. SQL Sentry cites federal district court decisions for the proposition that copying proprietary software may constitute conversion where it denies the plaintiff "its sole ownership rights to its proprietary information." (Mem. in Opp'n to Def.'s Mot. to Dismiss 5, ECF No. 14.) As in *Addison Whitney*, the Court continues to adhere to the reasoning of *RCJJ* and related decisions, all of which have held that, under North Carolina law, allegations of mere copying of electronically stored information are insufficient to state a claim for conversion. "In the absence of further guidance from the North Carolina Supreme Court or Court of Appeals, the Court declines to construe the law of conversion more broadly." *Addison Whitney*, 2017 NCBC LEXIS 51, at *18; *see also New Friendship*, 2017 NCBC LEXIS 72, at *39.

III.
CONCLUSION

18. The Court **GRANTS** ApexSQL's Rule 12(b)(6) motion and **DISMISSES** SQL Sentry's claim for conversion with prejudice.

This the 20th day of November, 2017.

                         /s/ Adam M. Conrad

                         Adam M. Conrad

                         Special Superior Court Judge

                          for Complex Business Cases