SYLVIA ANNE COLLINS SCHOOLFIELD AND HUSBAND, JAMES NORMAN SCHOOLFIELD, PETITIONERS v. WANDA LOUISE COLLINS (SINGLE); JOHN W. COLLINS AND WIFE, MYRTLE COLLINS; NASH R. COLLINS AND WIFE, ANN COLLINS; STEVE C. COLLINS AND WIFE, FREDA SINK COLLINS; ALICE COLLINS MAYS AND HUSBAND, GARLAND D. MAYS; DORA LUCILLE COLLINS (SINGLE); HAZEL COLLINS THOMPSON AND HUSBAND, WADE THOMPSON; FLEET M. COLLINS AND WIFE, CAROLYN COLLINS; AND RAYMOND COLLINS AND WIFE, JUANITA COLLINS, RESPONDENTS

No. 80

(Filed 16 June 1972)

1. Evidence § 28.5; Rules of Civil Procedure § 56— affidavit defined

An affidavit is a written or printed declaration or statement of facts which was made voluntarily and confirmed by the oath or affirmation of the party making it before an officer having authority to administer such oath.

Schoolfield v. Collins

2. **Rules of Civil Procedure § 56— motion for summary judgment — verified pleading — consideration as affidavit**

A properly verified pleading which meets all the requirements for affidavits may be considered as an affidavit in support of or in opposition to a motion for summary judgment.

3. **Evidence §§ 11, 33— parol trust — hearsay — dead man's statute**

Testimony as to statements made by respondent's mother, now deceased, is hearsay and therefore incompetent to show an alleged parol agreement that respondent's brother would hold title to real property in trust for respondent and her mother, and respondent is precluded by G.S. 8-51 from testifying to such personal transaction with her brother, who is also deceased.

4. **Trusts § 13— resulting trust — pro tanto payment of purchase price**

Respondent's contribution of approximately $100.00 toward the down payment of $310.00 on a house and lot, with no obligation to make further payments of any kind, was insufficient to establish in favor of respondent any ascertainable trust interest in the house and lot based on *pro tanto* payment of the purchase price.

5. **Trusts § 13— resulting trust — insufficiency of assertions**

Where respondent's assertions were insufficient to show what amounts, if any, were paid by respondent's mother to the seller of property conveyed to respondent's mother and brother, such assertions were insufficient to establish a resulting trust in favor of respondent's mother in the one-half undivided interest in the property to which respondent's brother held legal title.

6. **Wills § 2— contract to devise — trust in favor of promisee**

A written contract executed by respondent, her mother and her brother, whereby real property in which the three parties had an interest was to go to respondent upon the prior death of her mother and brother was a contract to devise, and, upon the prior death of respondent's brother without devising his interest in the property to respondent, the court will fasten a trust on such interest in favor of respondent.

7. **Wills § 2— implied promise to devise**

An agreement that a third party beneficiary shall have land at the death of the promisor implies his promise to devise or convey the property so as to effectuate the contract between the promisor and the promisee.

8. **Rules of Civil Procedure § 38— proceeding commenced prior to new Rules — last pleading after new Rules — failure to demand jury trial in apt time**

Where a proceeding was commenced prior to the effective date of the new Rules of Civil Procedure, but the last pleading was filed on 13 January 1970 after the new Rules had become effective, both parties were precluded from demanding a jury trial ten days after the last pleading was filed, and the denial of respondent's belated

demand for a jury trial filed on 18 February 1970 was within the discretion of the trial judge. G.S. 1A-1, Rules 38(b) and (d).

ON *certiorari* granted on petition of respondent Dora Lucille Collins to review decision of the Court of Appeals affirming judgment entered by *Johnston, J.*, at June 1, 1970 Civil Session of GUILFORD Superior Court, docketed and argued in the Supreme Court as No. 144 at Fall Term 1971.

Petitioners instituted this special proceeding on October 15, 1969, for the partition sale of a house and lot at 1213 Westside Drive, Greensboro, N. C., referred to hereafter as the subject property.

The petition and the answer of respondent Dora Lucille Collins, who is referred to hereafter as respondent, constitute the pleadings. None of the other persons named as respondents filed an answer or other pleading. Guilford County was permitted to intervene solely to assert its lien for unpaid taxes.

Alma C. Collins, a widow, died in Guilford County on March 24, 1963, survived by eight children, namely, respondents John W. Collins, Nash R. Collins, Steve C. Collins, Alice Collins Mays, Dora Lucille Collins, Hazel Collins Thompson, Fleet M. Collins and Raymond Collins. She was survived also by petitioner Sylvia Anne Collins Schoolfield and respondent Wanda Louise Collins, who are children of Robert W. Collins, a deceased son of Alma C. Collins.

Petitioners alleged that Alma C. Collins died intestate; that Sylvia Anne Collins Schoolfield and Wanda Louise Collins each owned a 5/18th undivided interest in the subject property; and that each of the surviving children of Alma C. Collins owned a 1/18th undivided interest therein. Respondent denied these allegations.

Petitioners alleged that Cone Mills Corporation, by warranty deed dated January 14, 1963, conveyed an undivided one-half interest in the subject property to Alma C. Collins (widow) and an undivided one-half interest therein to Louise G. Collins, Wanda Louise Collins and Sylvia Anne Collins; and that, by a quitclaim deed dated January 14, 1963, Louise G. Collins conveyed her entire interest in the subject property to Wanda Louise Collins and Sylvia Anne Collins.

Schoolfield v. Collins

Respondent admitted that Cone Mills Corporation signed the "paper writing" referred to by petitioners but "specifically denied that said paper writing constitutes a valid conveyance of said property to the persons named in that paper writing, because then, as now, the legal and beneficial interest to the entirety of said property was vested in the answering respondent, Dora Lucille Collins." Respondent admitted that Lucille G. Collins signed the "quitclaim deed" referred to by petitioners but "specifically denied that said paper writing conveyed any interest in this property whatever."

After answering petitioners' allegations, respondent alleged as further answers and defenses the matters set forth below.

In her "FIRST FURTHER ANSWER AND DEFENSE" respondent alleged the following: She and Alma purchased the property, furnishing all consideration (down payment, monthly payments, and mortgage insurance premiums). She was not named in the contract of sale, dated May 26, 1958, "for the reason that at the time of its execution she was an invalid confined to the home and could not appear with the other parties before a notary public at the Cone Mills office." Robert W. Collins, through whom feme petitioner claims, was named in the contract "for the sole purpose of obtaining mortgage life insurance on the contract, since Alma C. Collins was at that time uninsurable." A copy of the contract of sale was attached to the answer. Robert, Alma and respondent agreed from the beginning that Robert was to hold the property only as "a trustee for Alma C. Collins and the respondent." Alma died on March 24, 1963, leaving a will, dated February 8, 1959, probated January 5, 1970, leaving the contested property to respondent. A copy of the will was attached to the answer. On April 4, 1959, Robert, Alma and respondent entered into a written contract whereby the property was to go to respondent upon the death of Alma and Robert. A copy of this contract was attached to the answer. Respondent was in possession of the property on May 26, 1958, and has been ever since. Alma was also in possession until her death. Robert was also in possession, "with the express permission" of Alma and respondent, until his death on December 21, 1962. Respondent received no notice of any efforts by anyone to interfere with her possession until the commencement of this proceeding on October 15, 1969.

In the succeeding further answers and defenses, respondent alleged: (1) In respect of the subject property, Robert was the trustee of a resulting trust in favor of respondent and Alma; (2) respondent, as sole devisee under her will, became the owner of the undivided one-half interest of Alma; (3) feme petitioner and Wanda Louise Collins hold legal title to the subject property in constructive trust for respondent by virtue of the contract of April 4, 1959, entered into by Alma, Robert and respondent; (4) the claim of petitioners is barred by the statute of limitations on account of respondent's adverse possession of the subject property.

The purchase contract of May 26, 1958, designated Cone Mills Corporation as "Seller" and "Alma C. Collins (Widow) and son, Robert W. Collins," as "Purchaser." It provides that, as purchase price for the subject property, the "Purchaser" agrees to pay the principal sum of $6,200.00, consisting of a down payment of $310.00 and monthly payments of $52.43; and that the necessary portion of each installment payment shall be applied by the seller to the payment of interest, insurance premiums and ad valorem taxes.

The will of Alma C. Collins provides in part: "I want all my household good[s] to go to Lucille Collins and my house to go to Lucille Collins at my Death . . . . "

The contract of April 4, 1959, is quoted in full below.

To Whom It May Concern:

> Re: Alma C. Collins and Robert W. Collins —
> One house located at 1213 Westside Drive
> Greensboro, North Carolina

If the death of Mrs. Alma C. Collins should occur before Lucille Dora Collins, her interest in the above mentioned property shall go to Lucille Dora Collins. I[n] case of death of Lucille Dora Collins before the death of Alma C. Collins her interest in the above mentioned property shall go to Robert W. Collins. In case of death of Robert W. Collins before the death of Lucille Dora Collins his interest in the above mentioned property shall go to Lucille Dora Collins. In case of death of Alma C. Collins before Lucille

Dora Collins all personal belongs [*sic*] shall go to Lucille Dora Collins.

Given this the 4th day of April under our hands and seals.

Robert W. Collins    (SEAL)
Lucille Dora Collins    (SEAL)
Mrs. Alma C. Collins    (SEAL)

Witness:

Ralph J. Ritter

North Carolina

Guilford County

Sworn to and subscribed before me this the 4th day of April 1959.

Ruth L. Pritchett
Notary Public

My Commission expires 7-18-60

We note that respondent is designated in the caption and pleadings as "Dora Lucille Collins," in Alma's will as "Lucille Collins," and in the contract of April 4, 1959, as "Lucille Dora Collins."

Respondent prayed that the petition be dismissed and that the costs of the proceedings be taxed against petitioners.

Petitioners did not reply to the allegations of respondent's further answers and defenses.

Pursuant to Rule 33, G.S. 1A-1, petitioners filed "Interrogatories" on March 12, 1970. In her answers thereto, respondent asserted facts set forth in the opinion.

On June 1, 1970, petitioners filed a motion for summary judgment in their favor upon all issues arising in this cause, asserting "that the pleadings, together with the answers to interrogatories, show that there is no genuine issue as to material fact and that they are entitled to judgment as a matter of law."

Petitioners' motion for summary judgment was heard on June 10, 1970, at which time, as recited in the judgment, Judge Johnston "read the pleadings, the interrogatories, the answers

to the interrogatories," and an affidavit of Henry N. Patterson, Jr., an attorney for respondent.

In accordance with the allegations in respondent's first further answer and defense, the court found as a fact that on January 5, 1970, which was after the filing of petitioners' (amended) petition, "a holographic will of Alma Collins, deceased, was probated in common form in the Estates Division of this Court," and that counsel for petitioners and respondent had stipulated "that said will is now binding on the parties for purposes of this action; that under the terms of said will, Dora Lucille Collins is the sole devisee of the real property of Alma Collins, deceased, who was the owner of an undivided one-half interest in said real property . . . . "

Based upon this stipulation and the documents referred to above, the court entered summary judgment which adjudged that, subject to the lien in favor of Guilford County for taxes, petitioner Sylvia Anne Collins Schoolfield and respondent Wanda Louise Collins each owned an undivided one-fourth interest in the subject property and that respondent Dora Lucille Collins owned an undivided one-half interest therein.

(Note: Prior to the hearing on petitioners' motion for summary judgment, respondent's motions for a jury trial of the issues arising on the pleadings had been denied. The facts pertinent to respondent's exception to this order will be stated in the opinion.)

Upon respondent's appeal, the Court of Appeals affirmed Judge Johnston's judgment. 12 N.C. App. 106, 182 S.E. 2d 648 (1971). On October 5, 1971, this Court granted respondent's petition for *certiorari*.

*Turner, Rollins & Rollins, by Elizabeth O. Rollins, for petitioner appellees.*

*Smith & Patterson, by Henry N. Patterson, Jr., for respondent appellant.*

BOBBITT, Chief Justice.

Rule 56, G.S. 1A-1, which became effective on January 1, 1970, has been considered in *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971); *Harrison Associates v. State Ports Authority,* 280 N.C. 251, 185 S.E. 2d 793 (1972); *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972); *Koontz v. City of Winston-Salem,* 280 N.C. 513, 186 S.E. 2d 897 (1972);

Schoolfield v. Collins

*Blades v. City of Raleigh,* 280 N.C. 531, 187 S.E. 2d 35 (1972). The general rules applicable to summary judgment under Rule 56 as laid down in *Kessing* are approved and applied in the later cases. In each of these cases, summary judgment was held to be proper under the circumstances of the particular case.

The Court of Appeals held that respondent's answers to the interrogatories failed "to disclose competent evidence of facts showing that there is a genuine issue for trial"; that the "answers to the interrogatories reveal that no genuine issue as to a material fact exists"; and that "upon the facts established petitioner was entitled to judgment as a matter of law." The opinion does not set forth what facts the court considered established or the reasons for its conclusion that petitioners were entitled to judgment as a matter of law.

As noted in our preliminary statement, respondent made a part of her answer a copy of the purchase contract of May 26, 1958, in which Cone Mills Corporation was designated as "Seller" and "Alma C. Collins (Widow) and son, Robert W. Collins," were designated "Purchaser." She alleged that Robert W. Collins died on December 21, 1962. She admitted that Cone Mills Corporation had executed the deed dated January 14, 1963, which, in terms, conveyed an undivided one-half interest in the subject property to Alma C. Collins (widow) and an undivided one-half interest to Louise G. Collins, Wanda Louise Collins and Sylvia Anne Collins. She also admitted that Louise G. Collins had executed a quitclaim deed dated January 14, 1963, which, in terms, conveyed her entire interest in the subject property to Wanda Louise Collins and Sylvia Anne Collins. (Note: Respondent's petition for *certiorari,* which is verified by respondent, asserts (1) that "the mortgage life insurance on the life of Robert Collins paid the balance due on the land contract" and (2) that Louise G. Collins was the estranged wife of Robert W. Collins.)

Upon the admitted facts stated in the preceding paragraph, *nothing else appearing,* feme petitioner and respondent Wanda Louise Collins, as heirs of Robert W. Collins, would own an undivided one-half interest in the subject property and summary judgment in their favor would be correct. Any genuine issue as to a material fact must relate to facts alleged as the basis for respondent's asserted further answers and defenses.

Under Rule 56 (c) the absence or presence of a genuine factual issue may be shown by *"the pleadings,* depositions, answers to interrogatories, and admissions on file, together with the affidavits, *if any."* (Our italics.) While the object of the last two sentences of Rule 56 (e) is to pierce *general allegations* in the non-movant's pleadings, Rule 56 (e) does not deny that a properly verified pleading which meets all the requirements for affidavits may effectively "set forth specific facts showing that there is a genuine issue for trial."

**[1, 2]** In her pleading, respondent alleged specific facts within her *personal knowledge.* Her pleading was verified in the manner prescribed by Rule 11 (b), sworn to and subscribed before a notary public. An affidavit is "[a] written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath." Black's Law Dictionary, 80 (Rev. 4th ed. 1968) ; *Ogburn v. Sterchi Brothers Stores, Inc.,* 218 N.C. 507, 11 S.E. 2d 460 (1940). Respondent's pleading meets all of these requirements; and, in respect of the specific facts stated therein, is an affidavit. "[T]here is nothing in the rules which precludes the judge from considering a verified answer as an affidavit in the cause." *Fletcher v. Norfolk Newspapers,* 239 F. 2d 169 (4th Cir. 1956). "To the extent that a verified pleading meets [the requirements of Rule 56 (e)] then it may properly be considered as equivalent to a supporting or opposing affidavit, as the case may be." 6 Moore's Federal Practice, par. 56.11[3], at 2176 (2d ed. 1965).

**[3]** We consider first respondent's allegation that "[i]t was initially and always the agreement among respondent Dora Lucille Collins and Alma C. Collins and Robert W. Collins, that the interest of Robert W. Collins in said property was that only of a trustee for Alma C. Collins and the respondent Dora Lucille Collins." As to whether this allegation, if supported by competent evidence, would defeat petitioners' claim, see *Bryant v. Kelly,* 279 N.C. 123, 181 S.E. 2d 438 (1971). In her answer, respondent asserted she had knowledge of the alleged agreement. In her answers to interrogatories, she asserted that three named persons had knowledge of statements made to them by Alma C. Collins which tended to support respondent's said general allegation. Testimony as to statements made by Alma would be incompetent as hearsay and G.S. 8-51 would preclude

respondent from testifying to such personal transaction with Robert. In short, respondent's answers to the interrogatories fail to show the existence of competent evidence to support her general allegations in reference to the alleged parol trust.

[4]   Independently of the alleged parol trust agreement, respondent alleges that she and Alma together "furnished all of the consideration for the down payment and for all of the monthly payments, including mortgage insurance premiums, until the property was paid for in full." Answering interrogatories pertinent to this allegation, respondent asserted that she personally "provided approximately one hundred dollars toward the down payment" for the subject property. She asserted that she observed Alma take funds which she (Alma) had received from the Social Security Administration and funds which were given her by respondent "when she went to the Cone Mills office to make the down payment" on the subject property. Respondent's contribution of *approximately* $100.00 toward the down payment, with no obligation to make further payments of any kind, is insufficient to establish in favor of respondent any ascertainable trust interest in the subject property based on *pro tanto* payment of the purchase price. *Rhodes v. Raxter*, 242 N.C. 206, 208, 87 S.E. 2d 265, 267 (1955).

[5]   Alternatively, respondent asserts ownership of the subject property as beneficiary under Alma's will. This contention presupposes that Alma became sole owner because of contributions she made toward the purchase thereof.

With reference to payments subsequent to the down payment, respondent asserted that she "observed Alma Collins each month take funds derived from her social security check to make the monthly payments on the land contract and send this money by different individuals to the Cone Mills Plant." Although she asserted that "receipts for the monthly payments state that they were received of Alma Collins," no receipts were produced and identified. Garland C. Mays was identified as a person to whom "Alma Collins on a number of occasions gave money . . . to take to the Cone Mills Proximity Plant to make the monthly payments on the land contract." No affidavit of Garland Mays was presented. Respondent did not identify any other individual to whom Alma gave money to be taken to Cone Mills Corporation to make the monthly payments on the purchase contract.

Schoolfield v. Collins

Cone Mills Corporation acknowledged receipt of the down payment of $310.00 from the "Purchaser." Alma and Robert became equally obligated for the payment of the balance of $5,890.00 plus interest, taxes and insurance premiums. Respondent's assertions, although competent, were insufficient to show what amounts, if any, were paid to Cone Mills Corporation by Alma. When Robert died, the unpaid balance was paid from the insurance on his life.

Absent affidavits disclosing competent evidence of the existence of the express parol trust *alleged* by respondent, respondent's assertions were not sufficient to establish that Robert held the legal title to an undivided one-half interest in the subject property as trustee for Alma. With reference to resulting trusts, see *Waddell v. Carson*, 245 N.C. 669, 97 S.E. 2d 222 (1957), and cases cited; also, *Bryant v. Kelly, supra.*

Even so, for the reasons stated below, the court erred in granting petitioners' motion for summary judgment. The facts asserted by respondent in her verified pleading and in her answers to interrogatories which, for present purposes, must be accepted as true, include those narrated below.

On April 4, 1959, Robert, Alma and respondent executed the contract quoted in full in our preliminary statement. This contract provides for the disposition of the subject property upon the death of the three persons having an interest therein. One provision states: "I[n] case of death of Lucille Dora Collins before the death of Alma C. Collins, *her interest* in the above mentioned property shall go to Robert W. Collins." (Our italics.) Robert W. Collins died December 21, 1962. The contract further provides: "In case of death of Robert W. Collins before the death of Lucille Dora Collins *his interest* in the above mentioned property shall go to Lucille Dora Collins." (Our italics.) The contract also provides: "If the death of Mrs. Alma C. Collins should occur before Lucille Dora Collins, *her interest* in the above mentioned property shall go to Lucille Dora Collins." (Our italics.)

In May, 1958, respondent was completely disabled and confined to a wheel chair. She had been disabled since about 1950 and was receiving social security benefits as a dependent child of her father who died in 1956. Alma, her mother, also was receiving social security benefits. The amounts which Alma

sent to Cone Mills Corporation in payment of monthly install-
ments for the subject property were derived from Alma's social
security benefits. Respondent contributed her social security
benefits to pay for household expenses of the family. Robert
Collins helped buy some groceries and small household items
which constituted his contribution to the operation of the house-
hold on Westside Drive during the period from May, 1958,
until he became disabled. Robert Collins's two children, Wanda
and Sylvia, resided in the household.

Respondent was in possession of the subject property on
May 26, 1958, and since then has been in continuous actual
possession of the property. She shared the possession of the
property with her mother, Alma C. Collins, until her death on
March 24, 1963. Robert W. Collins lived there from May 26,
1958, until his death on December 21, 1962.

The affidavit of Henry N. Patterson, Jr., states that on
June 5, 1970, he examined records in the Guilford County De-
partment of Social Services pertinent to the present proceeding;
that "[t]hese records contain a signed admission by Robert W.
Collins that he was purchasing the property which is the subject
of this proceeding along with his mother (Alma Collins) and
his sister (Dora Lucille Collins)"; and that these records had
been subpoenaed for production in evidence. However, it does
not appear that these records were produced for consideration
by Judge Johnston. They are not in the record before us and
are not necessary to decision on this appeal.

[6]  Respondent's contention that she is the beneficiary of a
trust created by the contract of April 4, 1959, is supported by
our decisions. The contract is a contract to devise even though
it is not expressly so termed.

[7]  "An agreement that a third-party beneficiary shall have
land at the death of the promisor implies his promise to devise
or convey the property so as to effectuate the contract between
the promisor and the promisee. *Ledingham v. Bayless,* 218 Md.
108, 145 A. 2d 434, and the authorities cited therein at 116,
145 A. 2d at 439." *Wells v. Dickens,* 274 N.C. 203, 211, 162
S.E. 2d 552, 557 (1968).

In the cited Maryland case of *Ledingham v. Bayless,* this
statement appears: "The authorities make it plain that if there
is a contractual obligation under which property is to pass at

the death of the promisor, a contract to bequeath or devise will be implied, although there is no express undertaking by the promisor to execute a will. A promise that the promisee shall receive the property, or that it shall be his at the death of the promisor, is sufficient and it is not necessary that the means by which title is to pass shall be spelled out. Page [Wills, Lifetime Edition], Sec. 1710; 94 C.J.S. Wills §§ 111, 112, pp. 863, 865-866." Decisions cited in support of this statement include *Stockard v. Warren,* 175 N.C. 283, 95 S.E. 579 (1918), in which this Court declared a trust was created when the landowner promised his nephew that if he would come and take care of the farm and stock, at the death of the landowner and his wife, "all the stock and 200 acres of land on home place shall be yours to have and hold forever in fee-simple."

An annotation following *Naylor v. Shelton,* 102 Ark. 30, 143 S.W. 117, Ann. Cas. 1914A 394 (1912), contains this statement: "[W]hile a court of chancery is without power to compel the execution of a will, and therefore the specific execution of an agreement to make a will cannot be enforced, yet if the contract is sufficiently proved and appears to have been binding on the decedent, and the usual conditions relating to specific performance have been complied with, then equity will specifically enforce it by seizing the property which is the subject matter of the agreement, and fastening a trust on it in favor of the person to whom the decedent agreed to give it by his will." Ann. Cas. 1914A at 399. This statement is quoted with approval in *Stockard v. Warren, supra* at 285, 95 S.E. at 580, and in *Clark v. Butts,* 240 N.C. 709, 714, 83 S.E. 2d 885, 889 (1954).

Specific facts set forth by respondent, with special emphasis on the contract of April 4, 1959, are sufficient to defeat petitioners' motion for summary judgment. These specific facts have not been controverted affirmatively by reply, affidavits or otherwise. Whether respondent's pleading be deemed an affirmative defense or a counterclaim *not* denominated as such, no responsive pleading was required and respondent's allegations of specific facts are to be taken as *denied* by petitioners. Rule 8(d). Such denial is sufficient to raise issues of fact to be determined at trial.

[8] Respondent's appeal also presents the question whether the court erred in denying her motions for a jury trial.

The original petition was filed October 15, 1969. An amendment thereto was filed December 18, 1969. Respondent's answer was filed January 13, 1970. It contained no demand for a jury trial. On February 18, 1970, respondent filed a one-sentence "DEMAND FOR JURY TRIAL." On March 13, 1970, respondent filed a "MOTION FOR JURY TRIAL," wherein respondent requested the trial court in its discretion to order a jury trial under Rule 39(b). On March 19, 1970, Judge Crissman, in the exercise of his discretion, denied this motion.

The new Rules of Civil Procedure went into effect on January 1, 1970. Chapter 803, Session Laws of 1969. Under prior North Carolina law, a request for jury trial was not required. G.S. 1-172 (Recompiled 1953) provided, "An issue of fact must be tried by a jury, unless a trial by jury is waived or a reference ordered." G.S. 1-184 (Recompiled 1953) provided that the means for waiver of jury trial were default or consent. However, Rule 38(d) of the new Rules provides that "the failure of a party to serve a demand as required by this rule . . . constitutes a waiver by him of trial by jury."

Rule 38(b) provides, "Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after commencement of the action and not later than 10 days after the service of the last pleading directed to such issue . . . ."

Section 10 of Chapter 954, Session Laws of 1967, provided: "This Act shall be in full force and effect on and after July 1, 1969, and *shall apply to actions and proceedings pending on that date* as well as to actions and proceedings commenced on and after that date." (Our italics.) Chapter 803 of the Session Laws of 1969 repeated this provision in its entirety, except that the effective date was changed to January 1, 1970. The clear intent of the General Assembly was to apply the new Rules from the effective date to all civil cases, and not to permit the confusion which would be attendant upon trying to apply different procedures to cases begun before and to cases begun after the effective date.

The denial of respondent's belated demand for a jury trial was within the discretion of Judge Crissman. No abuse of discretion or error of law is involved.

No constitutional question is presented. Petitioners and respondent are equally denied a jury trial. The last pleading

was filed on January 13, 1970. Ten days from that date *both* parties were precluded from demanding a jury trial. Rules 38(b) and (d).

The foregoing leads to this conclusion: The decision of the Court of Appeals is reversed. The cause is remanded to that court with direction to vacate the summary judgment and to remand the cause to the Superior Court for trial in accordance with Rule 52(a) (1).

Reversed and remanded.