JAMES H. TOMS AND TOMS AND BAZZLE, P.A., PLAINTIFFS v. LAWYERS MUTUAL LIABILITY INSURANCE COMPANY OF NORTH CAROLINA; THE HOME INDEMNITY COMPANY; AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY, DEFENDANTS

No. 9029SC1259

(Filed 17 September 1991)

1. **Insurance § 150 (NCI3d)— professional liability insurance— insurer's duty to defend—failure to obtain aircraft liability insurance—acting as attorney—professional services to others—issues of material fact**

In an action to determine whether defendant insurer was obligated by a professional liability policy to provide a legal defense to plaintiff attorney and plaintiff law firm in an action arising out of the crash of an airplane owned by a nonprofit corporation, the facts admitted and alleged in the verified answers and crossclaims in the underlying lawsuits raised genuine issues of material fact as to whether plaintiff attorney was acting in his capacity as an attorney or acted only as a part owner of the airplane when he undertook and failed to obtain aircraft liability insurance, and whether plaintiff attorney's failure to obtain aircraft liability insurance involved rendering professional services to others within the purview of the policy. Therefore, the trial court erred in entering summary judgment in favor of defendant insurer.

Am Jur 2d, Attorneys at Law § 197; Insurance § 726.

2. **Insurance § 150 (NCI3d)— professional liability insurance— professional services—procurement of liability insurance**

An attorney's procurement of liability insurance can constitute the rendering of "professional services" within the meaning of a professional liability policy.

Am Jur 2d, Attorneys at Law § 197; Insurance § 726.

3. **Insurance § 150 (NCI3d)— professional liability insurance— rendering professional services "to others"—issue of material fact**

A genuine issue of material fact was raised as to whether plaintiff attorney was rendering professional services "to others" within the meaning of a professional liability policy when he undertook and failed to obtain liability insurance for an airplane

TOMS v. LAWYERS MUT. LIABILITY INS. CO.

[104 N.C. App. 88 (1991)]

owned by a nonprofit corporation or whether plaintiff's actions came within the business activities exclusion of the policy where plaintiff testified that, although he thought he was purchasing an interest in the nonprofit corporation that owned the airplane, he actually acquired no interest in the corporation.

**Am Jur 2d, Attorneys at Law § 197; Insurance § 726.**

APPEAL by plaintiffs from Judgment of *Judge Marvin K. Gray* entered 21 September 1990 in HENDERSON County Superior Court. Heard in the Court of Appeals 4 June 1991.

*McGuire, Wood & Bissette, P.A., by Joseph P. McGuire, for plaintiff appellants.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Roy W. Davis, Jr., and Michelle Rippon, for defendant appellee Lawyers Mutual Liability Insurance Company.*

COZORT, Judge.

Plaintiffs instituted this declaratory judgment action against Lawyers Mutual Liability Insurance Company (Lawyers Mutual) seeking to establish Lawyers Mutual's obligation to defend the plaintiffs and provide coverage pursuant to a professional liability insurance policy in two underlying lawsuits against plaintiffs in the Superior Court of Henderson County. Superior Court Judge Marvin Gray granted the defendant's motion for summary judgment. We reverse on the duty to defend issue and remand.

Plaintiff James Toms is an attorney practicing with plaintiff Toms and Bazzle, P.A. (the Professional Association), in Henderson County. In 1981, James Wilkins, Edwin Hicks, and Roger Ward formed a corporation, Mountain Scenic Aero, Inc. (MSA), for the purpose of owning and flying a Cessna 172 airplane. Mr. Wilkins served as president and Mr. Jones served as secretary. In 1984, Mr. Jones purportedly sold his interest in the corporation to Mr. Toms and delivered all the corporate records to Mr. Toms. Mr. Toms informed Mr. Wilkins that a liability insurance policy on the airplane had expired at the end of 1984. With Mr. Wilkins' permission, Mr. Toms obtained a quote on the annual premium for a liability policy; however, he failed to pay the premium because of insufficient funds in MSA's bank account.

In June 1985, the airplane crashed, resulting in injury to one minor passenger and death to two passengers. As a result of the crash, two lawsuits were brought in the Henderson County Superior Court, one on 18 April 1986 and one on 12 January 1987.

On 6 June 1988, Mr. Toms and the Professional Association filed suit against Lawyers Mutual seeking a declaratory judgment that Lawyers Mutual was obligated to provide legal defense and coverage on behalf of Mr. Toms and the Professional Association in the two underlying suits. (Other insurance carriers were also defendants in this action; however, they are not parties to this appeal, and will not be further mentioned.) On 21 September 1990, the trial court granted the defendant's motion for summary judgment. From this judgment, plaintiffs appeal.

On appeal, plaintiffs contend that the trial court erred in concluding as a matter of law that Lawyers Mutual had no duty to defend the plaintiffs as insureds. We agree.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 690, 340 S.E.2d 374, 377 (1986); N.C. Gen. Stat. § 1A-1, Rule 56(c). "A properly verified pleading which meets all the requirements for affidavits may effectively 'set forth specific facts showing that there is a genuine issue for trial.'" *Schoolfield v. Collins*, 281 N.C. 604, 612, 189 S.E.2d 208, 212-13 (1972). "An issue is material if facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971). "[T]he burden is upon the moving party to establish the lack of any triable issue of fact." *Dendy v. Watkins*, 288 N.C. 447, 452, 219 S.E.2d 214, 217 (1975).

In *Waste Management of Carolinas, Inc.*, 315 N.C. at 691-92, 340 S.E.2d at 377-78 (1986), the North Carolina Supreme Court summarized the scope of an insurer's duty to defend an insured:

Generally speaking, the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy. An insurer's duty to defend is ordinarily measured by the facts as alleged in the

TOMS v. LAWYERS MUT. LIABILITY INS. CO.

[104 N.C. App. 88 (1991)]

pleadings; its duty to pay is measured by the facts ultimately determined at trial. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. *Strickland v. Hughes*, 273 N.C. 481, 487, 160 S.E.2d 313, 318 (1968); 7C J. Appleman, *Insurance Law and Practice* § 4683 (1979 & Supp. 1984). (Footnote omitted.) Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.

Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage. 7C J. Appleman, *Insurance Law and Practice* § 4683. . . . In addition, many jurisdictions have recognized that the modern acceptance of notice pleading and of the plasticity of pleadings in general imposes upon the insurer a duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources. Even though the insurer is bound by the policy to defend "groundless, false or fraudulent" lawsuits filed against the insured, if the facts are not even arguably covered by the policy, then the insurer has no duty to defend. *See generally* 14 Couch on Insurance 2d § 51:46 (rev. ed. 1982); 7C J. Appleman, *Insurance Law and Practice* § 4684.01.

\* \* \* \*

. . . Any doubt as to coverage is to be resolved in favor of the insured.

*Id.* (citations omitted). "[I]f the pleadings allege any facts which disclose a possibility that the insured's potential liability is covered under the policy, then the insurer has a duty to defend." *Wilkins v. American Motorists Ins. Co.*, 97 N.C. App. 266, 269, 388 S.E.2d 191, 193 (1990).

Plaintiffs' insurance policy provides in pertinent part:

TOMS v. LAWYERS MUT. LIABILITY INS. CO.

[104 N.C. App. 88 (1991)]

## I. Coverage

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as money damages because of any claim or claims . . . *arising out of any act or omission of the Insured in rendering or failing to render professional services for others in the Insured's capacity as a lawyer* or notary public . . . except as excluded or limited by the terms, conditions and exclusions of this policy.

\* \* \* \*

### EXCLUSIONS

This policy does not apply:

\* \* \* \*

(g) to any claim arising out of the Insured's acts or omissions as an officer, director, partner, trustee or employee of a business enterprise or charitable organization or of a pension, welfare, profit sharing, mutual or investment fund or trust;

\* \* \* \*

(i) to any claim arising out of or in connection with the conduct of any business enterprise (including the ownership, maintenance or care of any property in connection therewith) owned by any insured or in which any insured is a partner, or which is directly or indirectly controlled, operated or managed by any insured either individually or in a fiduciary capacity. (Emphasis added.)

[1] Defendant contends that it was not obligated to provide a defense in the underlying lawsuits because the pleadings did not allege facts indicating that the event was covered under the policy. Specifically, defendant argues that (1) plaintiff Toms did not undertake to obtain liability insurance in his capacity as an attorney and (2) the failure to obtain liability insurance did not involve rendering *professional services to others*. Although the defendant's assertions may be proven correct at trial, we find the pleadings and depositions in the underlying lawsuits raise genuine issues of material fact which make this lawsuit inappropriate for summary judgment.

TOMS v. LAWYERS MUT. LIABILITY INS. CO.

[104 N.C. App. 88 (1991)]

First, Lawyers Mutual argues in its brief that plaintiff Toms was not acting as an attorney for MSA, rather, he was assuming the duties of the former corporate secretary. Moreover, pointing to Mr. Toms' deposition testimony that he did not consider his relationship with MSA to be an attorney-client relationship, Lawyers Mutual argues that there is no evidence that Mr. Toms acted as attorney for MSA. We disagree. The facts admitted and alleged in the verified answers and crossclaims in the two underlying lawsuits raise a genuine issue of material fact as to whether Mr. Toms was acting as an attorney for MSA when he failed to obtain the aircraft liability insurance.

In the first underlying action, Civil Action No. 86 CVS 351, the plaintiffs therein asserted seven negligence claims against MSA, Mr. Wilkins, Mr. Hicks, the pilot Mr. Ward, and Mr. Toms. In pertinent part, plaintiffs therein made the following allegations to support the claim that Mr. Toms had breached his contract as attorney for MSA in failing to obtain liability and property insurance for the airplane and its occupants:

25. James Toms is a member of the Bar of the State of North Carolina and is licensed to practice law and does practice law in Hendersonville, North Carolina.

26. On or before June 16, 1985 James Toms contracted to act as attorney for the partnership, joint venture, or Defendant nonprofit corporation . . . and in doing so undertook to purchase and provide liability and property damage insurance for the subject aircraft and its occupants.

27. On or before June 16, 1985, the Defendant James Toms, acting as an attorney as aforesaid, breached his contract with the partnership, joint venture or corporation to secure liability and property damage insurance for the subject aircraft in that he failed to obtain, or allowed to lapse, said liability and property damage insurance for the subject aircraft even though the other Defendants herein had provided him with the monies sufficient to obtain or maintain said insurance.

In their verified Answer and Crossclaim in the underlying action, Wilkins and Hicks asserted a crossclaim against Mr. Toms alleging that as corporate attorney for MSA Mr. Toms acted negligently in failing (1) to obtain and make payment for the aircraft liability policy, (2) to notify any person connected with MSA of

the need for more money to pay the premiums, (3) to inform MSA that the policy had been cancelled, and (4) to obtain a renewal of the old policy or to obtain a new policy.

In his Answer and Crossclaim in the underlying action, Mr. Ward admitted that Mr. Toms had contracted to act as corporate attorney and had failed to obtain the liability insurance. Mr. Ward also asserted a crossclaim against Mr. Wilkins and Mr. Toms alleging, in part, that Mr. Toms was a licensed attorney who, in his capacity as attorney or part owner of the aircraft, undertook to obtain liability insurance on the aircraft and negligently failed to do so.

MSA made similar admissions, claims, and allegations in its verified Answer.

In the second underlying action, Civil Action No. 87 CVS 13, plaintiffs therein asserted four claims: (1) against the Professional Association for negligently and wrongfully appropriating the aircraft and entrusting it to the Professional Association's employees; (2) against both Toms and the Professional Association for negligence in allowing the aircraft liability insurance to lapse without informing the MSA members; (3) against Toms for intentional wrongdoing in allowing the insurance to lapse; and (4) against the Professional Association for gross negligence of its alleged agent, Mr. Wilkins, in failing to properly maintain the aircraft and to warn other members of MSA that certain equipment was inoperative.

We find the verified answers and crossclaims raise a genuine issue of material fact as to whether Mr. Toms undertook to obtain the liability insurance in his capacity as an attorney.

Lawyers Mutual next argues that it has no duty to defend Mr. Toms because his failure to obtain liability insurance was not a "professional service rendered to others" within the meaning of the policy language. The insurance policy, however, does not define the phrase "professional services" and our research revealed no North Carolina cases interpreting a professional services provision in a professional liability policy for lawyers.

N.C. Gen. Stat. § 84-2.1 (1985) does offer some guidance, by defining the phrase "practice law" as

performing any legal service for any other person, firm or corporation, with or without compensation, specifically including

**TOMS v. LAWYERS MUT. LIABILITY INS. CO.**

[104 N.C. App. 88 (1991)]

the preparation or aiding in the preparation of deeds, mortgages, wills, trust instruments, inventories, accounts or reports of guardians, trustees, administrators or executors, or preparing or aiding in the preparation of any petitions or orders in any probate or court proceeding; abstracting or passing upon titles, the preparation and filing of petitions for use in any court, or assisting by advice, counsel, or otherwise in any such legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation: *Provided, that the above reference to particular acts which are specifically included within the definition of the phrase "practice law" shall not be construed to limit the foregoing general definition of such term, but shall be construed to include the foregoing particular acts, as well as all other acts. within said general definition.*

*Id.* (emphasis added). The last sentence of the definition makes it clear that the statute does not encompass *all* the activities that could be considered the practice of law.

[2] Although we agree with defendant that "the mere fact that someone is an attorney does not automatically transform everything he or she does into professional services," we cannot agree that as a matter of law obtaining liability insurance can never be a "professional service." An attorney often undertakes to perform services in a professional capacity that a non-attorney could also legally perform.

The New Jersey Supreme Court has stated the test for defining "professional services" as follows:

[T]he controlling circumstance is whether the attorney was in fact engaged for the purpose of obtaining his legal services. If he was so engaged, then the fact that in the course of the rendition of the services he stepped beyond the strictly legal role to undertake to render services which a non-lawyer could render, would not justify the conclusion that he was engaged other than as a lawyer.

*Ellenstein v. Herman Body Co.*, 23 N.J. 348, 352, 129 A.2d 268, 270 (1957). The United States Court of Appeals for the Fourth Circuit applied this test in *Continental Cas. Co. v. Burton*, 795 F.2d 1187 (4th Cir. 1986).

Similarly, in the case before us, the key to whether Mr. Toms performed a professional service is not the act of obtaining liability insurance, but rather the capacity in which he undertook the performance of the act.

A jury could find that Mr. Toms was acting in his capacity as attorney and performed a professional service when he undertook to procure the liability insurance. For example, in *American Fire and Casualty Co. v. Kaplan*, 183 A.2d 914 (D.C. Mun. Ct. 1962), an attorney representing both the buyer and seller in a real estate transaction undertook but failed to obtain a fire insurance policy on the real estate which was subsequently damaged by fire. On appeal, the court found that the jury instructions were consistent with the policy requirement that the insured was covered only when acting as an attorney since "[t]he jury could have found on the uncontradicted testimony of Kaplan that he was acting in the capacity of an attorney (rather than as an insurance broker as defendant argued)." *Id.* at 916.

Since the verified answers and crossclaims admit and allege that Mr. Toms in his capacity as attorney for MSA undertook to obtain liability insurance, there is a genuine issue of material fact whether this act was a professional service within the terms of the policy.

[3] Defendant also contends that Mr. Toms did not render professional services "to others" within the meaning of the policy since the underlying pleadings allege that he held an interest in the aircraft. Defendant further relies upon allegations of Mr. Toms' ownership interest in the aircraft to argue no coverage and no duty to defend because of the policy's business activities exclusions.

In deciding a summary judgment motion, however, the trial court must review the " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits [to] show that there is no genuine issue as to any material fact.' " *Kessing*, 278 N.C. at 534, 180 S.E.2d at 830. In a 2 September 1986 deposition, Mr. Toms testified that, although he thought he was purchasing an interest in MSA in 1984, he actually acquired no interest in the non-profit corporation. This testimony raises a genuine issue of material fact as to Toms' ownership interest in the aircraft and the applicability of the business activities exclusions relied upon by Lawyers Mutual in denying any duty to defend.

Since the pleadings and depositions in the underlying lawsuits raise genuine issues of material fact concerning Lawyers Mutual's duty to defend, the trial court's order granting summary judgment must be reversed and the case remanded for resolution of the disputed issues.

Reversed and remanded.

Judges ORR and WYNN concur.