IN THE SUPREME COURT OF NORTH CAROLINA

No. 10A20

Filed 20 November 2020

IN THE MATTER OF: S.E.T.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review on order entered on 25 September 2019 by Judge Kim Gasperson-Justice in District Court, Henderson County. This matter was calendared in the Supreme Court on 7 October 2020, but was determined upon the basis of the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Emily Sutton Dezio, PA, by Emily Sutton Dezio, for petitioner-appellee.*

*Sean P. Vitrano for respondent-appellant.*

ERVIN, Justice.

Respondent-father Jeremy T. has sought review of an order entered by the trial court terminating his parental rights in his daughter S.E.T.[1] As a result of our determination that the trial court lacked personal jurisdiction over respondent-father in light of the failure of petitioner-mother Heather G. to effect proper service by publication pursuant to N.C.G.S. § 1A-1, Rule 4(j1) (2019), we vacate the trial court's termination order.

---

[1] S.E.T. will be referred to throughout the remainder of this opinion as "Sara," which is a pseudonym that will be used to protect the juvenile's privacy and for ease of reading.

Petitioner-mother gave birth to Sara in Buncombe County in April 2009 and named respondent-father as Sara's father on her birth certificate. On 7 May 2019, petitioner-mother filed a petition seeking to terminate respondent-father's parental rights in Sara on the grounds that respondent-father had neglected Sara, N.C.G.S. § 7B-1111(a)(1); was incapable of caring for Sara and lacked an adequate alternative child care arrangement, N.C.G.S. § 7B-1111(a)(6); and had willfully abandoned Sara, N.C.G.S. § 7B-1111(a)(7). On the same date, a summons directed to respondent-father at 639 Maple Street in Hendersonville, which is the address at which the Hendersonville Rescue Mission is located, was issued. The summons was returned unserved on 16 May 2019 bearing a notation made by Deputy Sheriff C.E. Wade of the Henderson County Sheriff's Office that respondent-father had "[n]o address located in Henderson County," that respondent-father did "not stay at address given," and that respondent-father had "been banned from property per Director."

On 28 May 2019, petitioner-mother filed a motion seeking leave to serve respondent-father by publication in which respondent-mother alleged:

> 2. That the [p]etitioner-mother] has been unable to obtain service of [her] Petition on [respondent-father].
>
> 3. Pursuant to criminal charges in 2019 the last known address of [respondent-father] was: 639 Maple Street, Hendersonville, NC 28792.
>
> 4. The current whereabouts of [respondent-father] are unknown.

> 5. That after all due diligence service on [respondent-father] is not possible.

On 14 June 2019, Judge Thomas M. Brittain entered an order granting petitioner-mother's request to be allowed to serve respondent-father by publication in which Judge Brittain made findings of fact that tracked the allegations contained in respondent-mother's motion and concluded that petitioner-mother was "in need of an order allowing service on [respondent-father] by publication in Henderson County at this time to perfect service in this matter."

On three consecutive Wednesdays ending on 10 July 2019, petitioner-mother obtained the running of a notice of service by publication in the *Hendersonville Lightning* that informed respondent-father that a termination of parental rights proceeding had been initiated against him and advising him that he had until 28 July 2019 within which to file a responsive pleading. Respondent-father did not file a pleading in response to petitioner-mother's termination petition. On 9 August 2019, petitioner-mother filed a notice of hearing directed to respondent-father's provisional appointed counsel indicating that this matter would be heard on 29 August 2019.

The issues raised by petitioner-mother's termination petition came on for hearing before the trial court on 29 August 2019. After respondent-father failed to appear for the termination hearing, his provisional appointed counsel sought leave to withdraw from his representation of respondent-father on the grounds that he "ha[d] not heard from this client in [an]y way, shape or form[.]" The trial court granted this

withdrawal motion based upon a finding that respondent-father's provisional appointed counsel had "received no communication from [respondent] and . . . can take no position in this matter . . . ." The only evidence received at the termination hearing consisted of petitioner-mother's testimony.

On 25 September 2019, the trial court entered an order finding that respondent-father's parental rights in Sara were subject to termination for neglect pursuant to N.C.G.S. § 7B-1111(a)(1) based upon his use of methamphetamine, his failure to maintain contact with Sara, and his failure to provide any financial support for Sara; his failure to pay for Sara's support after custody had been awarded to petitioner-mother pursuant to N.C.G.S. § 7B-1111(a)(4); his incapability of caring for Sara as a result of his substance abuse pursuant to N.C.G.S. § 7B-1111(a)(6);[2] and his abandonment of Sara pursuant to N.C.G.S. § 7B-1111(a)(7). In addition, the trial court found that it would be in Sara's best interests for respondent-father's parental rights to be terminated given that petitioner-mother had married, that her husband assisted petitioner-mother in caring for Sara, that petitioner-mother and her husband were able to provide financial and emotional support for Sara, and that petitioner-mother's husband intended to adopt Sara.

Respondent-father, proceeding *pro se*, attempted to note an appeal to this Court from the trial court's order. After respondent-father's appellate counsel filed a

---

[2] Petitioner-mother had not alleged that respondent-father's parental rights were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(6) in her termination petition.

certiorari petition noting that respondent-father had failed to attach a certificate of service to his notice of appeal and requesting the issuance of a writ of certiorari authorizing review of the trial court's termination order on the merits, *see* N.C. R. App. P. 3(e), 3.1(b), 26(d), this Court granted respondent-father's certiorari petition.

In seeking relief from the trial court's termination order before this Court, respondent-father contends that, since the trial court never acquired jurisdiction over his person in this case, the challenged termination order is void. More specifically, respondent-father contends that petitioner-mother failed to comply with the statutory requirements for service of process by publication set out in N.C.G.S. § 1A-1, Rule 4(j1), given that "[p]etitioner[- mother]'s counsel did not file with the [trial] court an affidavit showing 'the circumstances warranting the use of service [by] publication, and information, if any, regarding the location of the party served.' " N.C.G.S. § 1A-1, Rule 4(j1). In response, petitioner-mother asserts that, prior to serving respondent-father by publication, she filed a motion seeking leave to serve respondent-father by publication signed by her trial counsel in which she set forth the basis for her contention that she was entitled to serve respondent-father by publication; notes that N.C.G.S. § 1A-1, Rule 11(a), provides that an attorney's signature upon a pleading, motion, or other similar document "constitutes a certificate by [counsel] that [s]he has read the [motion]" and that, "to the best of h[er] knowledge, information, and belief formed after reasonable inquiry," the filing "is well grounded in fact[,]" N.C.G.S. § 1A-1, Rule 11(a) (2019); and argues that the presence

of her trial counsel's signature on the motion seeking leave to have respondent-father served by publication was "the equivalent of a verification of the facts contained therein" sufficient to satisfy the requirements of N.C.G.S. § 1A-1, Rule 4(j1).

As a result of the fact that "[s]ervice of process by publication is in derogation of the common law," statutory provisions authorizing service of process in that manner "are strictly construed, both as grants of authority and in determining whether service has been made in conformity with the statute." *Harrison v. Hanvey*, 265 N.C. 243, 247, 143 S.E.2d 593, 596–97 (1965). "A defect in service of process by publication is jurisdictional, rendering any judgment or order obtained thereby void." *Fountain v. Patrick*, 44 N.C. App. 584, 586, 261 S.E.2d 514, 516 (1980) (citing *Sink v. Easter*, 284 N.C. 555, 561, 202 S.E.2d 138, 143 (1974)); *see also Macher v. Macher*, 188 N.C. App. 537, 539, 656 S.E.2d 282, 284 (2008) (stating that "[a] judgment against a defendant is void where the court was without personal jurisdiction"), *aff'd per curiam*, 362 N.C. 505, 666 S.E.2d 750 (2008).

N.C.G.S. § 7B-1106, which governs service of process in termination of parental rights proceedings, provides, in pertinent part, that:

> (a)    Except as provided in [N.C.]G.S. [§] 7B-1105, upon the filing of the petition, the court shall cause a summons to be issued. The summons shall be directed to the following persons or agency, not otherwise a party petitioner, who shall be named as respondents:
>
> (1)    The parents of the juvenile.
>
> . . . .

> The summons shall notify the respondents to file a written answer within 30 days after service of the summons and petition. Service of the summons shall be completed as provided under the procedures established by [N.C.]G.S. [§] 1A-1, Rule 4. Prior to service by publication under G.S. 1A-1, the court shall make findings of fact that a respondent cannot otherwise be served despite diligent efforts made by petitioner for personal service. The court shall approve the form of the notice before it is published.

N.C.G.S. § 7B-1106(a) (2019). As a result, in order to properly effectuate service of process by publication in a termination of parental rights proceeding, the petitioner must comply with both the "findings" requirement set out in N.C.G.S. § 7B-1106(a) and the provisions of N.C.G.S. § 1A-1. Rule 4(j1).

According to N.C.G.S. § 1A-1, Rule 4(j1):

> A party that cannot with due diligence be served by personal delivery, registered or certified mail, or by a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) may be served by publication. . . . If the party's post-office address is known or can with reasonable diligence be ascertained, there shall be mailed to the party at or immediately prior to the first publication a copy of the notice of service of process by publication. The mailing may be omitted if the post-office address cannot be ascertained with reasonable diligence. Upon completion of such service there shall be filed with the court an affidavit showing the publication and mailing in accordance with the requirements of [N.C.]G.S. [§] 1-75.10(a)(2), the circumstances warranting the use of service by publication, and information, if any, regarding the location of the party served.

N.C.G.S. § 1A-1, Rule 4(j1). As the Court of Appeals has correctly held, a "[f]ailure to file an affidavit showing the circumstances warranting the use of service by

publication is reversible error." *Cotton v. Jones*, 160 N.C. App. 701, 703, 586 S.E.2d 806, 808 (2003).

Petitioner-mother candidly concedes that she did not file an affidavit showing "the circumstances warranting the use of service by publication, and information, if any, regarding the location of the party served,"[3] N.C.G.S. § 1A-1, Rule 4(j1), as part of her effort to obtain service of process upon respondent-father by publication. In addition, while the record does contain an affidavit executed by the publisher of the *Hendersonville Lightning* "attesting to the publication of the notice of service by publication" in a local newspaper, the existence of this affidavit does not satisfy the requirements of N.C.G.S. § 1A-1, Rule 4(j1), given that it fails to delineate the

---

[3] Although petitioner-mother has not directly asserted that the findings that the trial court made in the order allowing petitioner-mother's motion for leave to serve respondent-father by publication obviated the necessity for compliance with the affidavit requirement set out in N.C.G.S. § 1A-1, Rule 4(j1), she does mention the fact that the the trial court "agreed [that] there was good cause to serve [respondent] by publication" in attempting to distinguish decisions finding a lack of personal jurisdiction stemming from failures to comply with the affidavit requirement from the facts of this case. *See In re A.J.C*, 259 N.C. App. 804, 810, 817 S.E.2d 475, 480 (2018) (vacating a termination of parental rights order as a result of the petitioner's failure to file the affidavit required by N.C.G.S. § 1A-1, Rule 4(j1)); *Cotton*, 160 N.C. App. at 704, 586 S.E.2d at 808 (stating that, "where there was no affidavit showing circumstances warranting use of service by publication or alleging facts showing due diligence, no *in personam* jurisdiction was established over the defendant") (citing *County of Wayne ex rel. Williams v. Whitley*, 72 N.C. App. 155, 160–61, 323 S.E.2d 458, 463 (1984))). However, nothing that appears in N.C.G.S. § 7B-1106(a) in any way suggests that the making of the findings required by N.C.G.S. § 7B-1106(a) suffices to excuse a petitioner's failure to comply with the separate affidavit requirement contained in N.C.G.S. § 1A-1, Rule 4(j1). In addition, we note that the trial court's findings provide little or no justification for a decision to authorize petitioner-mother to serve respondent-father by publication. *Cf. Cotton,* 160 N.C. App. at 703–04, 586 S.E.2d at 808 (concluding that the trial court's after the fact finding that "plaintiff had satisfied the trial court [at a child custody hearing] that she had made diligent efforts to locate defendant" lacked sufficient record support and did not suffice to "cure plaintiff's failure to strictly comply with the statute permitting service by publication").

circumstances warranting service by publication in this case. *Cotton*, 160 N.C. App. at 703, 586 S.E.2d at 808; *In re A.J.C.*, 259 N.C. App. 804, 808, 817 S.E.2d 479, 480 (2018). As a result, the record simply does not contain an affidavit of the type contemplated by N.C.G.S. § 1A-1, Rule 4(j1).

We are not persuaded by petitioner-mother's argument that the fact that her trial counsel signed her motion for leave to serve respondent-father by publication, when taken in conjunction with N.C.G.S. § 1A-1, Rule 11, should be deemed sufficient to satisfy the affidavit requirement set out in N.C.G.S. § 1A-1, Rule 4(j1), and that a contrary determination "would mean that there is no value in the attorney's verification on the Motion Requesting Leave to Serve by Publication." Simply put, N.C.G.S. § 1A-1, Rule 11(a), provides that

> Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law . . .

N.C.G.S. § 1A-1, Rule 11(a). Petitioner-mother's argument to the contrary notwithstanding, the statutory language contained in N.C.G.S. § 1A-1, Rule 11(a), obviating the necessity for a verification or an affidavit does not apply in situations in which the necessity for a verification or affidavit is "specifically provided by rule or statute[.]" *Id.* As a result, since N.C.G.S. 1A-1, § Rule 4(j1), specifically requires

the filing of "an affidavit showing . . . the circumstances warranting the use of service by publication, and information, if any, regarding the location of the party served" in order for service by publication to be properly effectuated, the signature of petitioner-mother's trial counsel upon the motion seeking leave to serve respondent-father by publication does not suffice to satisfy the statutory affidavit requirement.

"An affidavit is '(a) written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath.' "[4] *Schoolfield v. Collins*, 281 N.C. 604, 612, 189 S.E.2d 208, 213 (1972) (quoting BLACK'S LAW DICTIONARY, 80 (Rev. 4th ed. 1968)). "Documents which are not under oath may not be considered as affidavits." *In re Ingram*, 74 N.C. App. 579, 580, 328 S.E.2d 588, 589 (1985). In light of the fact that the signature of petitioner-mother's trial counsel on the motion seeking leave to serve respondent-father by publication was not "confirmed" by an "oath or affirmation," that motion simply cannot be treated as an affidavit sufficient to satisfy the requirements of N.C.G.S. § 1A-1, Rule 4(j1).

Thus, we hold that, since the statutory requirements for service of process by publication must be strictly construed, *Harrison*, 265 N.C. at 247, 143 S.E.2d at 596–97, and since petitioner-mother failed to properly serve respondent-father by

---

[4] Unlike the situation before the Court in our recent decision in *Gyger v. Clement* (No. 31PA19) (14 August 2020), nothing in the statutory provisions at issue in this case in any way suggests that the term "affidavit" as used in N.C.G.S. § 1A-1, Rule 4(j1), should be understood in any way other than in its traditional sense.

publication in accordance with N.C.G.S. § 1A-1, Rule 4(j1), the trial "court acquired no jurisdiction over [respondent-father,]" *Sink*, 284 N.C. at 561, 202 S.E.2d at 143. As a result, we vacate the trial court's order terminating respondent's parental rights in Sara.[5]

VACATED.

---

[5] In view of our decision to vacate the trial court's termination order for lack of personal jurisdiction, we need not address respondent-father's remaining challenges to that order.